# LINCOLN & BLACK HILLS RAILROAD COMPANY V. WILLIAM F. SUTHERLAND ET AL.

## FILED APRIL 4, 1895.    No. 6238.

1. **Surface Water:** RAILROAD COMPANIES: NEGLIGENCE IN CONSTRUCTION OF EMBANKMENT: EVIDENCE: WITNESSES. A draw some seven miles in length crossed the premises of a farmer. The surface waters produced by rains and melting snows were wont to run into this draw from the surrounding territory and thence find their way to the Platte river. A railroad company constructed its road-bed across the premises and built an embankment, without culvert or opening over the draw. In a suit by the farmer against the railroad company for damages for negligently constructing the embankment without an opening, whereby the surface waters were stopped and overflowed the farmer's land and destroyed his crop, *held*, (1) that the evidence sustained the finding of the jury that the railroad company negligently constructed its embankment across the draw; (2) that such negligence of the railroad company was the proximate cause of the damages sustained by the farmer; (3) that nothing in the case made the production of expert testimony a necessity; (4) that any person who was acquainted with the draw and the manner in which the embankment was constructed, and the manner in which it affected the waters in the draw, was a competent witness to state such facts; and that it was for the jury to say, from all the facts and circumstances in evidence in the case, whether the embankment was negligently constructed.

2. ———: DAMAGES. The doctrine of this court is the rule of the common law, that surface water is a common enemy, and that an owner may defend his premises against it by dike or embankment, and if damages result to adjoining proprietors by reason of such defense, he is not liable therefor.

3. ———: ———. But this rule is a general one and subject to another common law rule, that a proprietor must so use his own property as not to unnecessarily and negligently injure his neighbor.

4. ———: NEGLIGENCE: DAMAGES. Therefore, every proprietor may lawfully improve his property by doing what is reasonably necessary for that purpose, and unless guilty of some act of neg-

ligence in the manner of its execution, will not be answerable to an adjoining proprietor, although he may thereby cause the surface water to flow on the premises of the latter to his damage; but if, in the execution of such enterprise, he is guilty of negligence, which is the natural and proximate cause of injury to his neighbor, he is accountable therefor. *Anheuser-Busch Brewing Association v. Peterson*, 41 Neb., 897, followed and reaffirmed.

ERROR from the district court of Merrick county. Tried below before MARSHALL, J.

The facts are stated by the commissioner.

*A. W. Agee* and *J. W. Deweese*, for plaintiff in error:

The owner of the lower estate may, without incurring liability for damages, erect a dike or embankment to prevent the flow of surface water on his land, even though it it may cause the water to back up and overflow adjoining lands. (*Morrison v. Buckport*, 67 Me., 353; *Murphy v. Kelley*, 68 Me., 521; *Sweet v. Cutts*, 50 N. H., 439; *Beard v. Murphy*, 37 Vt., 104; *Luther v. Wennisimmet Co.*, 9 Cush. [Mass.], 171; *Emery v. City of Lowell*, 104 Mass., 16; *Buffum v. Harris*, 5 R. I., 253; *Wakefield v. Newell*, 12 R. I., 75; *Wadsworth v. Tillotson*, 15 Conn., 366; *Gillett v. Johnson*, 30 Conn., 180; *Adams v. Walker*, 34 Conn., 466; *Chadeayne v. Robinson*, 11 Atl. Rep. [Conn.], 592; *Waffle v. New York C. R. Co.*, 58 Barb. [N. Y.], 413; *Wagner v. Long Island R. Co.*, 2 Hun [N. Y.], 633; *Bowlsby v. Speer*, 2 Vroom [N. J.], 351; *Limerick & Colebrookdale Turnpike Co.'s Appeal*, 80 Pa. St., 425; *Atchison, T. & S. F. R. Co. Hamner*, 22 Kan., 763; *Cairo & V. R. Co. v. Stevens*, 73 Ind., 278; *Pettigrew v. Evansville*, 25 Wis., 223; *Fryer v. Warne*, 29 Wis., 511; *Lessard v. Stram*, 22 N. W. Rep. [Wis.], 284; *Johnson v. Chicago, St. P., M. & O. R. Co.*, 50 N. W. Rep. [Wis.], 771; *O'Connor v. Fond du Lac, A. & P. R. Co.*, 52 Wis., 526; *Burke v. Missouri P. R. Co.*, 29 Mo. App., 370; *Schneider v. Mis-*

*souri P. R. Co.,* 29 Mo. App., 68; *Munkers v. Kansas City, St. J. & C. B. R. Co.,* 72 Mo., 514; *Barnes v. Sabron,* 10 Nev., 218; *Davis v. Londgreen,* 8 Neb., 43; *Pyle v. Richards,* 17 Neb., 181.)

When plaintiff in error obtained the right of way and paid the damages, this included any damages which might occur by reason of the obstruction of the flow of surface water from one portion of the lands of defendants in error to another portion thereof, by the grading of the road-bed. (*Wallace v. Columbia & G. R. Co.,* 12 S. E. Rep. [S. Car.], 815.)

The plaintiff in error, even if bound to so construct its road-bed as to permit the surface water which might be reasonably expected to accumulate on the lands of the defendants in error, to flow over its right of way, yet it is not bound to provide against such extraordinary rainfalls or freshets as could not be reasonably apprehended from careful observation and consideration of the history of the country, by a skillful engineer. (*Union Trust Co. v. Cuppy,* 26 Kan., 762; *Baltimore & O. R. Co. v. Sulphur Spring Independent School District,* 96 Pa. St., 65.)

*W. T. Thompson, contra:*

The company is liable for a failure to permit some egress for the surface water. (*Wharton v. Stevens,* 50 N. W. Rep. [Ia.], 562; *Vannest v. Fleming,* 79 Ia., 638; *Palmer v. Waddell,* 22 Kan., 352; *Kelly v. Dunning,* 39 N. J. Eq., 482; *Livingston v. McDonald,* 21 Ia., 160; *Anderson v. Henderson,* 124 Ill., 164; *Gormley v. Sanford,* 52 Ill., 158; *Gillham v. Madison County R. Co.,* 49 Ill., 484; *Peck v. Goodberlett,* 109 N. Y., 180; *Jeffers v. Jeffers,* 107 N. Y., 650; *McCormick v. Horan,* 81 N. Y., 86; *Martin v. Riddle,* 26 Pa. St. 415; *Kauffman v. Griesemer,* 26 Pa. St. 407; *Taylor v. Fickas,* 64 Ind., 173; *Ogburn v. Connor,* 46 Cal., 346; *Lord v. Carbon Iron Mfg. Co.,* 42 N. J. Eq., 157; *Boyd v. Conklin,* 54 Mich., 583; *Tootle v.*

*Clifton*, 22 O. St., 247; *Bates v. Westborough*, 151 Mass., 174; *Fremont, E. & M. V. R. Co. v. Marley*, 25 Neb., 138; *Stewart v. Schneider*, 22 Neb., 286; *Kearney v. Thoemason*, 25 Neb., 147.)

The position taken by counsel that the damages paid for the right of way through the lands of defendants in error included any damages which they might sustain by the stoppage of the flow of the surface water is erroneous. (*Fremont, E. & M. V. R. Co. v. Whalen*, 11 Neb., 585; *Fremont, E. & M. V. R. Co. v. Lamb*, 11 Neb., 592; *Jackman v. Missouri P. R. Co.*, 15 Neb., 524; *King v. Iowa M. R. Co.*, 34 Ia., 458; *Lehigh Valley R. Co. v. Lazarus*, 28 Pa. St. 203; *Patten v. Northern C. R. Co.*, 33 Pa. St., 426; *Fleming v. Chicago, D. & M. R. Co.*, 34 Ia., 353; *Delaware, L. & W. R. Co. v. Salmon*, 10 Vroom [N. J.], 299.)

RAGAN, C.

Sutherland Bros. owned the southwest quarter of section 25, township 14 north, and range 7 west of the 6th P. M., in Merrick county, and used and occupied said premises for farming purposes. Across this land, running in a northeasterly direction was a depression, called in this country a "draw." This draw was some seven miles in length. It headed or began some three miles southwest of the premises of the Sutherlands and emptied into Silver creek or some of its tributaries. This draw was not a running stream, but the waters from melting snows and rains which fell on a large area of land on either side of this draw drained into it and thence made their way through it and other channels to the Platte river. The Lincoln & Black Hills Railroad Company, a railway corporation of the state and hereinafter called the "Railroad Company," constructed its railroad bed and railway across this land of the Sutherlands and built across this draw a solid embankment of earth. At the place where the embankment was built

38

across the draw on the land of the Sutherlands the bottom of the draw was about a rod in width. Some time after the construction of this embankment by the Railroad Company a heavy freshet or rainfall occurred; the embankment stopped the waters which had collected in this draw and were making their way to the Platte river and threw them back upon the lands and crops of the Sutherlands and damaged them. The Sutherlands then brought this action against the Railroad Company to recover the damages which they had sustained by reason of the obstructed waters ruining their crops. The basis of their action against the Railroad Company was the negligent construction of the embankment across the draw, in this : that in constructing it they left no opening in the embankment through which the waters which had been accustomed to collect in said draw might escape. The Sutherlands had a verdict and judgment, and the Railroad Company prosecutes to this court a petition in error.

1. It is not argued here by counsel that the court erred in instructing the jury except in one instance, which will be hereinafter noticed; nor is there any argument that the court erred in the admission or rejection of any particular testimony. The entire argument relied upon here for a reversal is that the verdict and judgment are contrary to the evidence and the law of the case. The evidence shows, practically without conflict, the facts already stated. It shows that after this embankment was constructed across the draw, when the water stood in the draw at the embankment to the depth of a foot, that it would flow back a distance of five hundred feet; it shows also that the water would have to be almost two feet deep in the draw at the embankment before the water would begin to escape or run off in the ditches constructed by the Railroad Company for that purpose by the side of its track. We think that the evidence justified the finding of the jury that the Railroad Company negligently constructed its embankment

and road-bed across this draw. Counsel for the Rail-
road Company intimate in their argument that there is no
evidence in the record that this embankment was not con-
structed in the usual manner of constructing embankments
for railroads. In other words, the argument appears to be
that in order to enable the Sutherlands to recover it was
necessary for them to introduce the evidence of experts that
this embankment was improperly or negligently constructed.
We do not agree to this argument. We think that any
person who was acquainted with this draw, and the manner
in which the embankment was constructed, and the manner
in which it affected the waters run into this draw, was
competent to state the facts; and that it was for the jury
to say, from all the facts and circumstances in evidence in
the case, whether the embankment was negligently con--
structed. In other words, there was nothing in this case—
if indeed there is in any case—which made the production
of expert testimony a necessity. Another argument of
counsel is that the loss sued for here was caused by an extra-
ordinary rainfall and freshet—a rainfall unprecedented and
such as the Railroad Company, at the time it constructed.
the embankment, was not required to anticipate. We
think this argument is more untenable than the other.
It is the freshet and rainfall the Railroad Company was
charged with the duty of anticipating and providing against.
We conclude, therefore, that the evidence sustains the find-
ing of the jury that the Sutherland Bros. have sustained the
damages for which they obtained judgment, and that such
damages were the proximate result of the negligence of the
Railroad Company in constructing its embankment across
the draw in question without putting in a culvert or other
opening in said embankment for the escape of the waters
which were accustomed to run into said draw.

2. But it is argued that the judgment pronounced is
contrary to the law of the case, because the Railroad Com-
pany, in constructing the embankment across the draw,

·built it as it did to defend itself against surface waters;
that surface water is a common enemy, and that the owner
may defend his premises against surface water by dike or
embankment, and if damages result to adjoining proprie-
tors by reason of such defense, he is not liable therefor.
The general rule contended for by counsel will not be ques-
tioned; but in this particular case the railroad company
was not defending itself against surface waters by building
this embankment. It did not build the embankment to
keep the surface waters off its track, but it built it in order
to put its road-bed across the draw on a level with its road-
bed on either side thereof; and it neglected to put an open-
ing in this embankment, perhaps because it was cheaper
to build the embankment of dirt than it was to build a cul-
vert of wood or stone. The question of the right of a pro-
prietor to defend himself against surface waters has been
several times before this court.

In *Davis v. Londgreen*, 8 Neb., 43, this court held: "The
owner of a natural pond or reservoir, wherein the surface
water from the surrounding land accumulates, and from
which it has no means of escape except by evaporation or
percolation, cannot lawfully, by means of a ditch, discharge
such water upon the land of his neighbor, to his injury."

In *Pyle v. Richards*, 17 Neb., 180, Pyle's land lay im-
mediately north of Richards'. A railroad bed and tracks
lay on the line between the two pieces of land. Richards'
land was lower than Pyle's. A ravine arose southwest of
Pyle's land, extended northeast across it and across Rich-
ards' land. This ravine was fed by springs. During a
portion of the year a very small stream of water flowed
down the ravine and it was occasionally dry; and a large
amount of surface water from melting snows or heavy
rains ran into this ravine and thence found its way to the
Nemaha river. Pyle built a dam across this ravine on his
own land and cut a new channel so that the water which
was in this ravine in wet weather was discharged through

a culvert under the railroad bed aforesaid, and thence on the lands of Richards. Richards sued Pyle for damages he had sustained by reason of the discharge of these waters on his lands, and the court held that Richards was entitled to recover.

In *Fremont, E. & M. V. R. Co. v. Marley*, 25 Neb., 138, the railroad company constructed its road-bed across Marley's land and cut ditches on its right of way on either side of its track for the purpose of draining its track and right of way of surface water. The surface water which collected in one of these ditches was carried down and discharged in large volumes on the land of Marley, and he sued the railroad company for damages by reason thereof, alleging, as the basis of his suit, the negligent construction of the ditches by the railroad company on its right of way, their capacity being insufficient to carry off and discharge the surface water accumulating therein. The jury found that Marley had been damaged by the discharge of this surface water through the ditches constructed by the railroad company and that the ditches were negligently constructed by being of insufficient capacity to properly carry off the surface waters. This court sustained the finding of the jury, holding that: "A party has no right to collect surface water in a ditch or drain and permit it to flow onto the land of another without the latter's consent, and if he do so he will be liable for the damages sustained."

In *Morrissey v. Chicago, B. & Q. R. Co.*, 38 Neb., 406, the railroad company built a solid embankment across the valley of the Nemaha river, from the bank of the river to the foot-hills. It put no culvert or opening in the embankment between the foot-hills and the river. At the time when the waters of the Nemaha river overflowed its banks, these overflow waters, it was claimed, were deflected by this embankment and flowed in a stream across the river and overflowed the lands of Morrissey on the opposite banks. For the damages he sustained by these over-

flowing waters he sued the railroad company, and based his action on the ground that it had negligently constructed its embankment. This court held that it would presume, in the absence of evidence on the subject, that the embankment was for railway purposes and properly constructed, and that the railroad company for the constructing of the embankment in a proper manner was not liable in damages to Morrissey because the embankment deflected the surface waters that overflowed his lands.

In *Lincoln Street R. Co. v. Adams*, 41 Neb., 737, Adams owned a lot in the city of Lincoln which fronted north on, and was on a level with, the street. Immediately west of his lot was a railroad embankment some feet higher than the level of his lot and the level of the street in front of his lot. Just east of Adams' lot was a hill over which the street passed. The railway company laid its track in this street and in so doing made a cut in the hill and made an embankment in the street in front of Adams' lot so as to bring their street railroad bed on a level with the railroad embankment west of Adams' lot. A heavy rain storm occurred and the surface water on the hill which had been wont theretofore to run off in all directions was collected in this cut made by the street railway company and discharged in a body on the lot of Adams. And as the street railway company where it graded up the street in front of Adams' lot had put no culvert or left no opening in said grade for the escape of such waters they were held in a body on Adams' lot and damaged it; for which damages he sued the railway company. Its defense was that in making the cut in the hill and the embankment in the street that it was defending itself against surface water, the common enemy, and was therefore not liable; but the jury found that the street railway, in constructing its embankment in front of Adams' lot, had negligently constructed it in not leaving an opening in it for the escape of surface waters, and the court sustained the finding of the jury.

These cases, and all of them, recognize the rule of the common law that surface water is a common enemy and that the proprietor may by embankment or dike or otherwise defend himself against its encroachments and will not be liable in damages which may result from the deflection or repulsion of such surface waters defended against, provided that the proprietor in making the defenses on his own land himself exercised ordinary care; but these cases, and all of them, also recognize the rule that a proprietor must so use his own property as not to unnecessarily and negligently injure another. The most lucid and logical statement of the rule under consideration that has been made by this court will be found in *Anheuser-Busch Brewing Association v. Peterson*, 41 Neb., 897, where POST, J., speaking for the court, said: "Every proprietor may lawfully improve his property by doing what is reasonably necessary for that purpose, and unless guilty of some act of negligence in the manner of its execution, will not be answerable to an adjoining proprietor, although he may thereby cause the surface water to flow on to the premises of the latter to his damage; but if in the execution of such enterprise he is guilty of negligence, which is the natural and proximate cause of injury to his neighbor, he is accountable therefor." This is the doctrine of this court and is the essence of and controls every other decision of this court on the subject. *Bunderson v. Burlington & M. R. R. Co.*, 43 Neb., 545, does not, nor was not intended to, announce a contrary doctrine. In the last case it was said that the overflow complained of was not attributable to the railway embankment. As the evidence in the case at bar shows that the railroad company in constructing its embankment across the land of Sutherland Bros. was guilty of negligence in not constructing in said embankment a culvert or an opening for the surface waters which accumulated in the draw to escape, and as such negligence was the proximate cause of the injury sustained by Sutherland Bros.,

the judgment pronounced is not contrary to the law of the case.

3. Counsel for the plaintiff in error indulge in some criticisms upon the trial court in an instruction which it gave to the jury, because in such instruction the court, in speaking of the draw hereinbefore referred to, alludes to it as a "water-way," etc. We do not think the jury could possibly have been misled by this instruction, as the evidence, and all the evidence in the case, is to the effect that the draw was not a stream of flowing water, nor was it claimed or pretended to be such by Sutherland Bros.; and the court, by using the word "water-way," meant only the road or way which the surface waters took that accumulated in the draw; and the jury by the expression of the court did not understand him to be speaking of the draw as a flowing stream. There is no error in the record and the judgment of the district court is

AFFIRMED.