CHICAGO, ROCK ISLAND & PACIFIC RAILWAY COMPANY V.
RUTH A. SHAW.

FILED DECEMBER 18, 1901. No. 10,694.

Commissioner's opinion, Department No. 3.

1. **Surface Water.** RAILROAD. A railroad company may, like any
other proprietor, protect itself from the flow of ordinary sur-
face water, and will not be liable to an adjoining owner for so
doing. *Morrissey v. Chicago, B. & Q. R. Co.*, 38 Nebr., 406.

2. ———: ———: RAVINE: FLOOD: MELTING SNOWS: ROAD-BED:
DAM: EMBANKMEMT. Where, however, a large territory is
drained by a ravine or draw, through which the surface water
of such territory flows in times of flood or melting snows in
such quantities as to cut a channel, a railway company should,
in constructing its road-bed across such draw, provide for the
discharge of such water as naturally flows therein; and if its
road-bed is so constructed as to dam the water and flow it back
over the premises of an adjoining proprietor, or to discharge
the accumulated water in unusual quantities upon the land of
those adjoining, it will be liable for the damages occasioned
thereby. *Lincoln & B. H. R. Co. v. Sutherland*, 44 Nebr., 526;
*Town v. Missouri P. R. Co.*, 50 Nebr., 768.

3. **Act of God.** The act of God, when relied on as a defense, must be
specially pleaded.

4. **Amendment:** EVIDENCE. It is usually a matter within the dis-
cretion of the trial court to allow or refuse to allow a plead-
ing to be amended to conform to the evidence given on the
trial.

5. **Instructions.** Instructions examined, and found to state the law
correctly.

ERROR from the district court for Jefferson county.
Tried below before LETTON, J. *Affirmed.*

*M. A. Low* and *W. F. Evans,* for plaintiff in error.

*A. H. Babcock,* contra.

DUFFIE, C.

The defendant in error is the owner of the east half of
the south-west quarter of section 31, in township 4 of range

4 east, in Jefferson county, Nebraska. In 1892, the plaintiff in error constructed its road through Jefferson county, passing in a southwesterly direction over a part of the land of the defendant in error; entering on the same about 1,100 feet north of the southeast corner thereof, and leaving it about 800 feet west of the southeast corner. A draw runs through this land in a southeasterly direction, which drains a large body of country, estimated by the witnesses at from 1,500 to 1,800 acres. This draw carries a large volume of water during, and for some time after, a period of heavy rains, or melting snow, and it is described by most of the witnesses as having well defined banks for at least a portion of its length; and it flows into Cub creek about 50 yards from the point where it leaves the plaintiff's land. When the railroad company constructed its road-bed over plaintiff's premises, a dirt embankment was thrown up across this draw; provision being made for the escape of water running therein by placing a pipe 36 inches in diameter under the embankment, at or near the channel. Up to the year 1896 this pipe was apparently sufficient for the flowage of water running in the channel, but on June 6, 1896, a heavy rain precipitated a large volume of water into the draw, and, the pipe proving insufficient to allow its discharge, the water forced its way through the embankment, washing away a considerable portion thereof; and a 16-foot bridge was built in the opening thus made, and the pipe removed. This is the first flood for which damage is claimed. Other freshets occurring at subsequent dates washed away other portions of the embankment, and the bridge was enlarged until it is now 60 feet in length. This bridge, the plaintiff alleges, was not built over the channel formed by the running waters of the ravine, but some four rods north thereof, and on ground much higher than was the channel in which the water had been accustomed to run, the channel itself being obstructed by a solid earth embankment, and on three occasions, viz., June 6, 1896, June 30, 1896, and April 23, 1897, the flowing water was diverted from its accustomed channel and

impeded and obstructed in its passage by the road-bed of the company so negligently, wrongfully and improperly constructed, and caused to dam up and accumulate in large quantities against and alongside of said road-bed and embankment, on the upper side thereof, and to back up and flood over a large tract of plaintiff's land on the west side of said embankment, destroying her crops growing thereon; that finally the great pressure of water thus accumulated on the west side of said embankment broke through the same, and the pent-up waters in large volume and with great force rushed over and flooded a large part of her land on the southeast corner of her 80-acre tract, and on the east side of the road-bed, carrying with it sand, dirt and flood-trash, and depositing the same on various parts of her premises, and injuring her buildings and improvements which are located on the east side of the road-bed. The plaintiff's petition is in three counts, the first claiming compensation for the damage from the overflow of June 6, 1896; second, for that of June 30, 1896, and the third for that of April 23, 1897. The answer, in addition to a general denial, alleged that the railway was constructed, operated and maintained over the premises of the plaintiff, and at all other places, in a proper and lawful manner. A trial resulted in a verdict for the plaintiff and from a judgment entered thereon the railroad company has taken error to this court.

The first assignment discussed by the plaintiff in error is instruction No. 13 given by the court, which is as follows: "The plaintiff sues upon three counts, damages for the flood occurring June 6, 1896, for the flood occurring June 30, 1896, and for the flood occurring April 23, 1897. You will estimate the damages, if any, occurring at the time of each flood separately, and if you find defendant liable for the damages caused by any one flood and not for the others, you will confine the amount you find to the damages suffered at such time, but will bring in your verdict for the total amount of damages for which defendant is liable. If you find the defendant railroad company was

not negligent in the premises, you will find for the defendant." It is urged that there was no evidence whatever tending to show that the damage suffered by the plaintiff below from the storm of April 23, 1897, was caused by the railroad company or by the manner in which the railroad was constructed or maintained. While the direct evidence is not clear as it might have been upon this question, we are not prepared to say, considering all the circumstances of the case, that the court would be warranted in taking from the jury, or refusing to submit to the jury, the defendant's liability for the damages caused by the April flood. We think that there was evidence sufficient to go to the jury under the carefully prepared instruction of the court, and to uphold a finding that the damages were caused by the defendant's negligence in the construction of its roadbed.

The next assignment of error discussed in plaintiff's brief is the eighth instruction, as follows: "If you believe, however, that on said June 30, 1896, said embankment and the opening therein were so constructed as not to allow the discharge of the surface waters ordinarily flowing down or which might reasonably be expected to flow down said channel, and that by reason of such faulty construction, the plaintiff was damaged by said surface waters, then the plaintiff would be entitled to recover upon the second cause of action for damages caused by said flood of June 30th." As the material question in this case is the negligence of the company in not providing a sufficient opening in its embankment for the discharge of the surface water accumulating in the ravine or draw under the circumstances shown by the evidence in this case, we think it proper to state the objections taken to this instruction in the language used by the plaintiff in error in its brief, as follows: "This was clearly erroneous, as it assumed as a matter of law that if 'said embankment and the opening therein were so constructed as not to allow the discharge of the surface waters,' the railway company was guilty of negligence. In other words; the court told the jury by this instruction that, if the railway was 'so constructed as not

to allow the discharge of surface water' that, as a matter of law, was a 'faulty construction,' and the plaintiff below was entitled to recover all damages caused thereby. The following language of this court is especially applicable to this: 'A railroad company, in the absence of evidence to the contrary, must be presumed to have constructed its embankment in a manner proper for the operation of its line of railway. If in doing so surface water was deflected from its course so as to be thrown * * * over the land of the plaintiff, no right of action thereby accrues to the plaintiff.' *Morrissey v. Chicago, B. & Q. R. Co.*, 38 Nebr., 406. In that case the evidence showed that the railroad was constructed and maintained upon an embankment in such a manner as to cause the surface water to back up and flow over the plaintiff's land, but this court held that 'it is proper to presume, in the absence of proof on the subject, that said embankment was, for railway purposes, properly constructed.' In a later case this court said: 'This question was carefully considered in the case of *Morrissey v. Chicago, B. & Q. R. Co.*, 38 Nebr., 406, and the conclusion therein announced that the rule of the common law prevails in this country. Subject to that rule every proprietor may lawfully improve his property by doing what is reasonably necessary for that purpose, and unless he is guilty of some act of negligence in the manner of its execution, he will not be answerable to his neighbor, although he may thereby cause the surface water to flow upon or from the premises of the latter to his damage.' *Anheuser-Busch Brewing Ass'n v. Peterson*, 41 Nebr., 897."

We have given the argument and the citation of authorities in support thereof made by the plaintiff in error in order that its contention may be fully understood. If we understand the argument, it is to the effect that the common-law rule in relation to surface water is in force in this state, and that a railroad company, in common with other proprietors of land, may claim the benefit of that rule. At common law the proprietor has a right to protect his real estate against surface water. In doing so he may

Chicago, R. I. & P. R. Co. v. Shaw.

turn the water on the servient or lower land without liability to damage. Mere surface water—that which does not run in any confined course or channel—is regarded as a common enemy against which any landowner affected by it may fight. This rule was recognized and enforced in *Morrissey v. Chicago, B. & Q. R. Co., supra,* and it was the only question discussed or decided in the case. There was no question in that case, as we understand it, that the railroad company had negligently constructed its embankment so as to collect the surface water and flood it back on the land of another, or, after confining it, allowing it to break away and flood the servient estate. It was a mere question of whether, by the erection of an embankment which diverted the course of surface water upon the lands of another, the company was liable, and it was held that it was not liable. In the present case the question of a negligent construction is added as another element to be considered. At common law one could not negligently improve his property to the detriment of another. This is recognized in *Anheuser-Busch Brewing Ass'n v. Peterson, supra,* quoted by the plaintiff in error, and it is there said: "Every proprietor may lawfully improve his property by doing what is reasonably necessary for that purpose, and, unless guilty of some act of negligence in the manner of its execution, will not be answerable to an adjoining proprietor, although he may thereby cause the surface water to flow onto the premises of the latter to his damage. But if in the execution of such enterprise he is guilty of negligence, which is the natural and proximate cause of injury to his neighbor, he is accountable therefor." No one has the right to collect surface water upon his premises and flood it back upon his neighbor, or, after being collected in large quantities, to discharge it upon the adjoining estate to the injury of the latter. He may dike his own premises against its flow thereon. He may use such reasonable means as are necessary to retain it upon his premises, if he so desires; but he can not use his own premises to accumulate it in large quantities, and then flow it down upon

29

his neighbor, causing to the latter damage and injury. We think that this principle has been fully recognized and enforced in *Lincoln & B. H. R. Co. v. Sutherland*, 44 Nebr., 526, and *Town v. Missouri P. R. Co.*, 50 Nebr., 768. In the case first cited it is said: "The doctrine of this court is the rule of the common law,—that surface water is a common enemy, and that an owner may defend his premises against it by dike or embankment, and if damages result to adjoining proprietors by reason of such defense, he is not liable therefor. But this rule is a general one and subject to another common-law rule,—that a proprietor must so use his own property as not to unnecessarily and negligently injure his neighbor. Therefore, every proprietor may lawfully improve his property by doing what is reasonably necessary for that purpose, and, unless guilty of some act of negligence in the manner of its execution, will not be answerable to an adjoining proprietor, although he may thereby cause the surface water to flow onto the premises of the latter to his damage; but, if in the execution of such enterprise, he is guilty of negligence, which is the natural and proximate cause of injury to his neighbor, he is accountable therefor." In *Town v. M. P. R. Co.*, it is said: "Surface waters may have such an accustomed flow as to have formed at a certain place a channel or course, cut in the soil by the action of the water, with well-defined banks, and having many of the distinctive attributes of a watercourse; and though there are no exceptions to the general rule except from necessity, this may constitute an exception, and if the flow is stopped by the erection of an embankment across and in the channel, some provision may be necessary for the allowance of the regular flow of the surface waters. Whether such embankment has been negligently constructed with reference to the obstruction of the flow of the surface waters, and whether such negligence, if any, is the proximate cause of an alleged injury, are generally questions to be submitted to the jury." We think that the case last cited from is decisive of the one at bar, and we fully agree with the reasoning of that case. It

would be an unfortunate rule of law which would allow a railroad company, or any other proprietor of land, to erect an embankment across a ravine in which a large body of water is accustomed to run during the rainy season or upon the melting of snow without making the necessary provision for its flow in the usual manner. In the present case there was a ravine of some miles in length, down which the water poured in large quantities at certain seasons. It was fed by other like draws and streams. The fact that it cut its way through the solid embankment on different occasions, is evidence sufficient to show the volume and force of the water which it carried. It might, almost as a matter of law, be said to be negligence to throw an embankment across a ravine, without providing adequate means for the flow of the water; and it certainly ought not to be contended that the finding of the jury that such an act was negligence ought to be disturbed by the court. We regard it as now settled by the former decisions of this court that a railway company, or other proprietor of land, can not throw an enbankment across a ravine or draw, into and through which the surface water of a large scope of country is accustomed to flow, without providing adequate means for the usual flowage of the water naturally seeking such an outlet. We think that the court was fully justified, in giving its eighth instruction, by the cases above quoted, and that error can not be predicated thereon.

Complaint is made of the concluding paragraph of the sixth instruction of the court. Taking that part of the instruction alone, it would probably be incorrect and misleading, as the jury was told that the company was liable for not providing for the deposition of surface water which might injure the plaintiff. As we have seen, and as was held in *Morrisey v. Chicago, B. & Q. R. Co., supra,* the company was under no obligation to guard against the flow of surface water upon the premises of the plaintiff under ordinary circumstances, and where the conformation of the surrounding country did not force the water toward a common point of final drainage, and through which it had run

until a channel has been formed through which it seeks its natural outlet. The surroundings here were, however, of an exceptional character, and almost identical with those set out in *Lincoln & B. H. R. Co. v. Sutherland, supra,* and the court, evidently with that case in mind, called the attention of the jury, in another part of the sixth instruction, to the state of facts which the evidence tended to establish, and made it clear that it was only to the exceptional circumstances of the case that the instruction was applicable. That there may be no misapprehension of our meaning, we quote so much of the sixth instruction as precedes the phrase complained of: "The question whether or not the defendant railroad company was negligent in the construction of its embankment across the ravine or draw which traversed the plaintiff's land is a question which you must determine from all the facts and circumstances in evidence before you, and in passing upon this question you should take into consideration the length of the ravine or draw, the area of land which it and its branches and feeders drained above the point where the railroad crossed it, the height of its banks, its width, and whether or not water flowed or stood in the same for any length of time. You should consider the configuration of the ground at the place where the railroad embankment crossed it, the height of the embankment, and all other facts which have been testified to before you which will aid in deciding upon the effect that the construction of said embankment had upon surface waters which flowed down said draw. You should also consider the testimony as to the openings made in said embankment by the railroad company prior to the 6th day of June, 1896, when the first damage is claimed to have been suffered by the plaintiff; and should also consider the means, if any, devised by the railroad company for discharging the water which flowed down said channel through said embankment into the natural channel at a lower point, and if from all the evidence in the case you believe that said railroad company had used at or before the 6th day of June, 1896, such precautions

and means as an ordinarily prudent and reasonable person
would use, to guard against any damage to the plaintiff by
reason of the construction of said embankment, then the
defendant railroad company would not be guilty of negli-
gence in the premises and it would be your duty to find
for the defendant in such case." The instruction, as a
whole, correctly states the law as we understand it.

Complaint is further made that the court refused an in-
struction tendered by the plaintiff in error to the effect
that if the floods, or either of them, which did the damage
complained of, were unprecedented in character, and of
such force and volume as to make them, or either of them,
without parallel in the vicinity in which they occurred, and
were such as not to be anticipated, then for the damage
done by such floods the defendant would not be liable.
The court, we think, correctly refused the instruction. In
the first place, no defense of that character was tendered
by the answer filed by the defendant; and, secondly, there
is no evidence that the floods of June 6, 1896, and April 23,
1897, were of the character described in the instruction.
There was some evidence offered by the defendant company
tending to show that the storm of June 30, 1896, was un-
precedented in its character and force. After both parties
had rested, the defendant asked leave to amend its answer
to conform to the evidence, by alleging that the damages,
if any, which occurred from the flood of June 30, 1896,
were the result of such unprecedented storm and the act
of God. This request was refused, and the ruling of the
court is one of the errors assigned. Numerous authorities
are cited to the effect that, where evidence is offered and
received without objection upon a question not made an
issue by the pleadings, the court may allow an amendment
to conform the pleadings to the evidence. The practice of
allowing amendments under the circumstances shown in
the cited cases has undoubtedly been in force almost from
the adoption of the Code practice. In many instances it
has, without doubt, been in the interest of justice; and
this court would hesitate to take any stand to discourage

its allowance in all proper cases, in the discretion of the trial court. So much must, however, be left to the discretion of that court in the trial of a cause, that the facts showing an abuse of discretion must be strong and pointed before we should feel justified in reversing a case either for a refusal to amend to conform to the proof, or because such an amendment was allowed. It is seldom that we meet with a record that discloses such care on the part of the trial court, in guarding the rights of the parties as the one under consideration. The fact, if so it be, that the storm of June 30, 1896, was of the character described in the amendment proposed, was undoubtedly known to the company long prior to the time when its answer in this case was filed; and such a defense, if it existed, would hardly be overlooked by the eminent counsel representing the plaintiff in error. In any event, the matter of allowing or refusing the amendment was so wholly in the discretion of the trial court that we do not feel called upon to interfere, in the absence of a stronger showing of prejudice than is here made.

We recommend the affirmance of the judgment.

AMES and ALBERT, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, the judgment of the district court is

AFFIRMED.

NOTE.—As to surface water, and natural water course, as described in the foregoing opinion, see *Chicago, R. I. & P. R. Co. v. Andreesen,* 62 Nebr., 456, opinion by OLDHAM, C., and authorities cited in note. —REPORTER.