William P. Conn et al., Appellees, v. Chicago, Bur-
lington & Quincy Railroad Company, Appellant.

Filed March 16, 1911.   No. 16,287.

1. **Railroads: Construction of Roadbed: Liability.** A railway com-
pany by acquiring a right of way also secures the right to
construct and maintain a roadbed in a lawful and proper man-
ner, and, if in so doing it does not unnecessarily or negligently
injure its grantor or his successors in interest, it is not liable
to them for injuries inflicted as an incident to that construction
and maintenance.

2. **Waters: Construction of Roadbed: Negligence.** The mere fact
that a railway roadbed interferes with surface water not flow-
ing in any drain or watercourse will not sustain a finding of
negligent construction in an action brought to recover damages
for obstructing the flow of such water.

3. ———: ———: ———. In an action to recover damages for a
railway company's alleged negligence in constructing its road-
bed so as to interfere with the drainage of surface water, the
jury should be instructed that if the roadbed did not obstruct the
natural drains and watercourses through which accumulated
surface water was wont to flow while the premises were in a
state of nature, or if those drains were obstructed by the de-
fendant, so long as it substituted an artificial way of equal
capacity and efficiency, it was not negligent in constructing a
solid, continuous roadbed for its railway.

Appeal from the district court for Lancaster county:
Willard E. Stewart, Judge.   *Reversed.*

*J. E. Kelby* and *F. E. Bishop,* for appellant.

*Greene & Greene, contra.*

Root, J.

The plaintiffs allege that the defendant "negligently
and carelessly threw up and built an embankment across
said lands in such a manner as to deprive all of said lands
to the east of said embankment of drainage facilities for
surface waters which had theretofore been afforded by

the natural slope of said land southeast of the Nemaha river, and plaintiffs allege that defendant has negligently and carelessly maintained said embankments    *    *    * to this time." No motion was filed to make the petition more definite and certain, and, under the general allegation of negligence, any evidence was relevant which tended to prove that the defendant had violated any duty it owed the plaintiffs with respect to the subject of the litigation. *Omaha & R. V. R. Co. v. Wright,* 49 Neb. 456; *Union P. R. Co. v. Vincent,* 58 Neb. 171. The defendant answered by way of a general denial, and pleaded that its embankment was properly and skilfully constructed with respect to the maintenance and operation of its railway "and also with regard to the drainage of surface and flood waters on the lands adjacent thereto, and that said railroad and embankment have remained in practically the same condition as constructed for more than ten years prior to July, 1907," etc. A general demurrer to this defense was sustained. Error is assigned, but not argued, with respect to this ruling, and it will not be further considered.

The evidence discloses that the plaintiffs' land is situated in the valley of the Nemaha river; that the defendant's railway is between the river and the plaintiffs' land, and is constructed upon an embankment elevated about four feet above the surface of the valley. The elevation of the land increases to the northward, and the general course of the surface water is south and southeast toward the river. A highway, also constructed upon an embankment, runs northwest and southeast immediately east of the plaintiffs' land. The evidence tends strongly to prove that before the railway was constructed a draw or ravine extended from the Nemaha northwestward to a point within the defendant's right of way and close to the southeast corner of the land described in the petition, and that it furnished a way for surface water which accumulated thereon. The evidence also tends to prove that the defendant constructed its grade across

this draw and provided no opening for the escape of
water, but constructed a shallow ditch within its right of
way north of and parallel to its railway eastward, and
that the water thereby deflected eastward eventually
flowed into a natural watercourse. At the point where
the highway crosses the right of way there is a small
culvert. The evidence tends to prove that this ditch, at
the time of the alleged injuries, was choked by vegeta-
tion, and the culvert was insufficient to afford a way for
the waters, but we find no allegation in the petition
charging any neglect of duty concerning this ditch or the
culvert.

In the sixth paragraph of its charge, the court in-
formed the jury: "If you believe from the evidence that
the defendant railroad company, in the construction of
its roadbed across the land described in plaintiff's peti-
tion, failed to provide for the passage and discharge of
such waters as naturally flowed across such roadbed, or
which might be reasonably expected to so flow, and that
defendant's said roadbed is so constructed as to dam the
water and cause it to flow back over said land, and that
plaintiff's growing corn was injured because of the neg-
ligent construction of its said embankment, then said de-
fendant would be liable for such damages. * * * If, on
the other hand, you believe from the evidence that injury
to plaintiffs' crops * * * was not caused by the em-
bankment upon defendant's right of way, or that said
embankment was not negligently constructed, or that
said embankment did not obstruct the natural flow of
surface water, * * * then the plaintiffs would not be
entitled to recover in this action."

The defendant's argument principally concerns its
contention that the damages now sued for were within
the contemplation of the parties at the time it acquired
its right of way, that such damages were released by the
conveyance or proceedings whereby that right was secured,
and that, in any event, it has acquired by prescription the
right to maintain the roadbed in its present condition.

The giving of the sixth instruction is also assigned as error, and the assignment is briefly argued. The plaintiffs contend that any interference by the defendant with the movement of surface waters, whereby their crops were injured, creates a liability on its part, and that the cause of action arose at the time of the injury.

In *Morrissey v. Chicago, B. & Q. R. Co.*, 38 Neb. 406, the general proposition that the common law rule with respect to the right of a proprietor to control surface water is announced. In that case the plaintiff alleged, but did not prove, that the railway embankment was negligently constructed, and it is said, in effect, that the fact that the defendant's embankment obstructed the passage of water which overflowed the plaintiff's land did not prove negligence. In *Anheuser-Busch Brewing Ass'n v. Peterson*, 41 Neb. 897, it is held that every proprietor may improve his property by doing whatever is reasonably necessary for that purpose, and will not become answerable so long as he is not guilty of negligence. In that case the proprietor was negligent in leaving a depression in his lot and so situated that surface waters which accumulated therein percolated through the soil into a vault, and thence into his neighbor's ice house, and the lot owner was held liable for damages. In *Lincoln & B. H. R. Co. v. Sutherland*, 44 Neb. 526, the common law rule is recognized, but tempered by an application of the doctrine that one should so use his own property as not to unnecessarily and negligently injure another, and, because a natural drain had been obstructed by the defendant, it was held liable for damages. In *City of Beatrice v. Leary*, 45 Neb. 149, the defendant had interfered with a natural outlet for accumulated surface waters and was held liable. In *Jacobson v. Van Boening*, 48 Neb. 80, the principle is again announced.

Subsequently, in a long line of decisions, unnecessary to cite, this court say that a proprietor may improve his premises in any proper manner, although he may thereby interfere with diffused surface water, without becoming

liable to his neighbor, provided he does not unnecessarily or negligently injure him. Of course, he has no right to gather surface water together and pour it, out of the natural course of drainage, upon his neighbor's premises. Nor, if surface water has reached a natural drain, whether a stream, ravine or draw, has the one proprietor a right to dam the way and change the course of the water so as to cause it to flow back upon or over another proprietor's premises. *Chicago, R. I. & P. R. Co. v. Shaw,* 63 Neb. 380. The defendant is not situated with respect to adjoining or nearby owners as would a person be who is not engaged in the business of a common carrier. The carrier's first duty is to the public; it must so construct and maintain a roadbed that it may safely transport the freight and passengers entrusted to its care. If in that construction it takes or damages the property of any person, it must pay just compensation therefor, and when that payment has been made, there should be no question of the carrier's right to enjoy the privilege for which it has paid. If no part of the citizen's property has been taken, but by reason of the construction or operation of the railway his property is injured, he may recover in an action therefor. In the absence of a grant binding all persons affected and to be affected thereby, this court does not recognize the right of a railway company to obstruct the channel of a natural watercourse or drain, but has said that a continuing duty is imposed upon the carrier to permit the water to flow therein as it did in a state of nature, or to provide another adequate way therefor. And, in case of a failure to perform that duty, the injured person's cause of action arises at the time of the injury. *Morse v. Chicago, B. & Q. R. Co.,* 81 Neb. 745.

But this court has not said that, because a railway company constructs a roadbed so that it will interfere with the flow of diffused surface water under ordinary conditions, it is negligent, or that thereby it unnecessarily injures the coterminous proprietor. Should the company pierce its roadbed and install culverts at points where water did

not in a state of nature accumulate and flow in a body, the lower proprietor would have his cause of action against the company for gathering surface water together and pouring it in a quantity upon his land. The evidence does not clearly establish the defendant's liability, so that it has just cause to complain of instructions that permit a recovery on other than lawful grounds. Instruction numbered 6, it seems to us, permits a recovery for conditions which the defendant had a right to bring about when it acquired its right of way, and that, considering the petition and the proof, the giving of that instruction is prejudicial error.

We think that the court should have given instruction numbered 5, requested by the defendant. Instruction numbered 5, given by the court on its own motion, is not an incorrect definition of negligence considered as an abstract proposition, but it may have misled the jury. "A reasonable man, guided by those considerations which ordinarily regulate the conduct of human affairs," might be ignorant of the first principles controlling railway engineering and construction, and might conclude that a free way for surface water, rather than the permanence of a roadbed, should be the controlling factor in the construction and maintenance of a railway. The jury should have been told that, in so far as the roadbed interfered with the flow of diffused surface water, it did not invade the plaintiffs' rights and no recovery could be based thereon, and that so long as the carrier did not obstruct the natural drains and watercourses through which the surface water complained of would flow, were the land in the state of nature, or if those drains are obstructed by the defendant, so long as it furnished a sufficient substitute therefor, it was not negligent in constructing a solid continuous roadbed for its railway.

The judgment of the district court is reversed and the cause remanded for further proceedings.

REVERSED.

FAWCETT, J., not sitting.