ORIN V. ROBINSON, APPELLANT, v. THE CENTRAL NEBRASKA PUBLIC POWER & IRRIGATION DISTRICT, APPELLEE.

20 N. W. 2d 509

FILED NOVEMBER 9, 1945. No. 31968.

*Shuman & Overcash,* for appellant.

*Beatty & Clarke, R. O. Canady,* and *P. E. Boslaugh,* for appellee.

Heard before SIMMONS, C. J., PAINE, CARTER, MESSMORE, YEAGER, and CHAPPELL, JJ.

CHAPPELL, J.

This action was instituted by plaintiff to recover damages from defendant district for destruction of his growing crop because of its alleged obstruction of diffused surface waters by a spoil bank on its right-of-way for an irrigation canal. At the conclusion of plaintiff's evidence the trial court sustained defendant's motion to dismiss and entered judgment for defendant. Upon the overruling of plaintiff's motion for new trial, he appealed to this court, assigning as error that the order and judgment is contrary to the evidence and applicable law. We find that plaintiff's assignments cannot be sustained.

Plaintiff argues that because of section 21, art. I, Constitution of Nebraska, section 70-671, R. S. 1943, section 28-1016, R. S. 1943, and the evidence adduced by him in support of the allegations of his petition to the effect that defendant district negligently constructed and operated its canal, the trial court should have overruled defendant's motion to dismiss.

The ownership of the land involved by one Kate M. Herrod, plaintiff's crop tenancy thereof and damages to plaintiff's crops thereon by surface waters are conceded. The evidence is that plaintiff knew about and was acquainted with the farm and its contour for more than 25 years. He examined it and looked it all over just before he leased it. The land was good, almost level, farm land which sloped slightly to the northeast. There was no natural drainway, draw, channel, or watercourse of any kind upon it. It is conceded that we have involved here only wholly diffused

surface waters falling upon or flowing over the land from lands to the south of plaintiff.

Two or three years before plaintiff ever became a tenant or had any interest in the property the defendant district, having previously paid compensation therefor and lawfully acquired a right-of-way from the owner by deed, constructed and operated an irrigation canal diagonally northwest to southeast across the land with a spoil bank on the southwest side of the canal. A little northwest of the center of the spoil bank defendant constructed and maintained one three-foot syphon or underdrain. There is no complaint by plaintiff that this underdrain was obstructed by debris or otherwise. Plaintiff testifies that the bottom of the syphon was two and one-half or three feet above the level of the farm land. However, a picture appearing in plaintiff's evidence lends doubt to that contention. A heavy, extraordinary rain fell on or about June 12 and 13, 1943. The surface waters therefrom falling upon plaintiff's land and coming from and across land to the south of him flowed with force down over most of that portion of plaintiff's land southwest of the spoil bank in a wide sheet covering most of it. The surface waters flowed against the spoil bank, drained gradually into the underdrain for four days and thereafter a part of it stood on plaintiff's field for some time destroying a large part of his growing crop. There is evidence that the land was never theretofore flooded, by ordinary rainfall or otherwise, either before or since construction of the canal. There is no direct evidence that the canal was negligently constructed or operated, or that it could have been constructed in any other manner for the purposes and uses of defendant in lawfully carrying on its public works.

Plaintiff concedes in his brief that the deed from the owner to defendant district contained the provision: "The above named consideration includes all damages sustained by grantors as a result of the canal of The Central Nebraska Public Power and Irrigation District located on the aforementioned real estate."

We will first discuss the two statutes under which plaintiff claims a right to recover. Referring to public power and irrigation districts, section 70-671, R. S. 1943, provides: "Any such district shall be liable for *all* breaks, *overflow* and seepage damage. Damages from seepage shall be recoverable when and if it accrues." (Italics ours.)

Plaintiff contends that since this court in *Asche v. Loup River Public Power District*, 138 Neb. 890, 296 N. W. 439, held that damages from seepage were absolute then by analogy damages from overflow would also be absolute. For purposes of argument in this case that proposition may be admitted. However, the rule has no application here because plaintiff assumes a strained definition of "overflow" which was never intended by the act. The word "all" modifies the word "overflow." We are convinced that the Legislature never thereby intended to make the liability of such districts absolute for all interference with or obstruction of purely diffused surface waters. The word "overflow," as used in the statute, must reflect its ordinary, everyday application and use. The act intended to specifically make the damage liability of such districts for "all overflow" absolute for only waters flowing over and from or escaping out of their reservoirs and canals.

We intended to and did so construe and apply the act in *Webb v. Platte Valley Public Power & Irrigation District*, *ante*, p. 61, 18 N. W. 2d 563, a case wherein the canal was full, overflowing and thereby forcing floodwaters back upon the plaintiff's land destroying his crops. The situation in this case is entirely different. To hold that diffused surface waters which never entered defendant's canal were "overflow" and impose an absolute liability upon defendant would in effect, without statutory authority, abrogate the well-known law of this state relating to diffused surface waters, the evolution of which is exhaustively reviewed and reaffirmed in the recent case of *Snyder v. Platte Valley Public Power and Irrigation District*, 144 Neb. 308, 13 N. W. 2d 160. We have also examined section 28-1016, R. S. 1943, and find that it has no application to the situation presented in this case.

We turn then to the question whether defendant's liability is absolute by virtue of section 21, art. I, of the Constitution, which provides: "The property of no person shall be taken or damaged for public use without just compensation therefor." This court has construed and applied this section in many cases since its adoption. A perusal of them indicates clearly that the section has no application to situations like that presented by plaintiff. Generally speaking they are cases where property has been taken or damaged for public use without just compensation ever having been paid therefor. As late as *Snyder v. Platte Valley Public Power and Irrigation District, supra,* we permitted recovery by virtue of the section as well as for negligence and quoted with approval from the opinion in *City of Omaha v. Kramer,* 25 Neb. 489, 41 N. W. 295. In the latter opinion it was said: "In other words, the words, 'or damaged,' in Sec. 21, Art. I. of the constitution, *include all actual damages resulting from the exercise of the right of eminent domain which diminish the market value of private property.*" (Italics ours.) *Gledhill v. State,* 123 Neb. 726, 243 N. W. 909, relied upon by plaintiff to permit him to recover regardless of negligence is clearly distinguishable from the case at bar and we do not deem it necessary to discuss it at length in this opinion.

In *Snyder v. Platte Valley Public Power and Irrigation District,* 140 Neb. 897, 2 N. W. 2d 327, we reaffirmed the rules that: "The purchase of lands for a right of way in lieu of condemnation carries with it all of the incidents of eminent domain or condemnation in so far as damages by reason of construction are concerned." And, "In condemnation proceedings, it is presumed that the owner of damaged lands received or had opportunity to receive compensation for the injury to such lands." Also, "For all injuries which may arise on account of the proper construction or future operation of an improvement, an adjoining proprietor must be compensated in the original condemnation proceedings." See, also, 30 C. J. S., Eminent Domain, s. 400, p. 117. In other words, actions or proceedings to recover just compen-

sation for property taken or damaged for public use by proper construction and operation are permanent as distinguished from transient in character and recoverable in but one action.

However, actions for damages in such cases are ordinarily classified as permanent or transient according to the facts of each particular case and the right to recover respectively accrues to those who own the land or hold a damageable interest therein at the time the cause of the injury is created. By applying the principle that the owner can recover in but one action for proper construction and operation it follows that his tenant could recover therefor in but one action and that for damages to his crops then on the land and damaged thereby and his lease-hold estate then existent.

If a right of action in such cases does not pass from the owner to a subsequent grantee unless provision to that effect appears in the deed or by separate assignment (as stated in 20 C. J., Eminent Domain, s. 292, p. 858, approved in *Croft v. Scotts Bluff Co.*, 121 Neb. 343, 237 N. W. 149) then logically even if the landlord had a right of action it would not ordinarily pass to his tenant. Naturally if the landlord's right of action for proper construction and operation were satisfied, as in the case at bar, then a subsequent grantee (*Fremont, E. & M. V. R. Co. v. Harlin,* 50 Neb. 698, 70 N. W. 263) or a subsequent tenant would have no more rights than the landlord in any event since he would take it subject to such damages. See *Illinois Central R. R. Co. v. Ferrell,* 108 Ill. App. 659. This must be true because the same justice that requires one who lawfully takes or damages property for public use to pay just compensation therefor, protects him when he is without fault, from liability to pay more than once.

On the other hand if there is negligent construction or future operation and damages result therefrom all authority gives an owner or tenant a cause of action therefor whether he was such at the time of the exercise of the right of eminent domain, or otherwise. It was held in *Omaha &*

*Republican Valley Railroad Co. v. Standen,* 22 Neb. 343, 35 N. W. 183, an action to recover damages for the negligent construction of a bridge across the Platte River which unlawfully obstructed the flow, that: "The insertion of the words 'or damaged' in section 21, Art. I., of the constitution of 1875, was intended to give a right of recovery which did not previously exist, *and was not intended to limit or restrict any remedy previously existing."* (Italics ours.) To this we should now add the words "or subsequently provided by statute."

The plaintiff in the present case did not become a tenant or suffer damages to his crops until long after defendant's right-of-way was acquired by deed, payment made therefor, and construction and operation of the canal. He did not have a damageable interest at the time of the exercise of the right of eminent domain. The canal was not constructed or maintained without lawful right or put to an unlawful or improper use. Therefore, if he has any remedy it must be for negligent construction or operation and as such is transient in character.

The question in classifying causes of action as permanent or transient in such cases, is not whether damages were suffered because that is a fact alike common to both. The applicable rule is that where the structure causing the injury is permanent in character the injury cannot ever be classed as transient unless the structure was erected or maintained without lawful right, or has been put to an unlawful or improper use, or unless it was negligently constructed or operated and the injury complained of resulted, not from the fact of the existence of the structure but from the manner of its construction or operation. See *Illinois Central R. Co. v. Lockard,* 112 Ill. App. 423. See, also, *Fremont, E. & M. V. R. Co. v. Harlin, supra; Chicago, R. I. & P. R. Co. v. Andreesen,* 62 Neb. 456, 87 N. W. 167; *Chicago, R. I. & P. R. Co. v. Ely,* 77 Neb. 809, 110 N. W. 539; *Iske v. Missouri P. R. Co.,* 94 Neb. 9, 142 N. W. 671; *Bunting v. Oak Creek Drainage District,* 99 Neb. 843, 157 N. W. 1028; *Boschulte v. Elkhorn River Drainage District,* 102 Neb. 451, 167 N. W.

730; *Hopper v. Elkhorn Valley Drainage District,* 108 Neb. 550, 188 N. W. 239, for discussion of such principles.

It will be observed that plaintiff claims in his petition that defendant negligently constructed and operated its canal, thereby obstructing the natural flow of wholly diffused surface waters across his lands and destroying his crops. Of course, it is apparent at once that whether there was negligent construction or operation depends upon whether the evidence adduced by plaintiff establishes a violation of some duty imposed by law upon defendant.

It was held in *Snyder v. Platte Valley Public Power and Irrigation District,* 144 Neb. 308, 13 N. W. 2d 160, that: "A public power and irrigation district organized under chapter 86, Laws 1933, commonly referred to as Senate File No. 310, by its right of way has the same right as a railroad company has by its right of way and the same right as a farm owner has to his farm, or any other land proprietor, as to surface water." And, "The following, which is the common-law rule with exceptions, is a statement of the rule with regard to defense against surface water obtaining in this jurisdiction: Surface water is a common enemy and the proprietor may by embankment or dike or otherwise defend himself against its encroachments and will not be liable in damages which may result from the deflection and repulsion defended against, provided that the proprietor in making defense on his own land himself exercised ordinary care, and provided he so uses his own property as not to unnecessarily and negligently injure another." The latter rule reflects the duty imposed upon defendant in the case at bar and the trial court would not be required to submit the question of defendant's liability to a jury for determination unless the plaintiff established the violation thereof by competent evidence.

We turn then to the question of whether plaintiff's evidence was sufficient to take the case to the jury. In the consideration of that question we must bear in mind the well-known rule that a motion for directed verdict or dismissal must, for the purpose of a decision thereon, be treated as an

admission of the truth of all material and relevant evidence submitted on behalf of the party against whom the motion is directed, and such party is entitled to have every controverted fact resolved in his favor and to have the benefit of every inference that can reasonably be deduced from the facts in evidence. *Moncrief v. Interstate Transit Lines*, 129 Neb. 168, 261 N. W. 163. See, also, *Grantham v. Watson Bros. Transportation Co.*, 142 Neb. 362, 6 N. W. 2d 372.

From an examination of the record, we are of the opinion that there is no competent evidence requiring the submission of plaintiff's case to a jury for its determination. The mere fact that defendant lawfully constructed an irrigation canal which thereafter interfered with or obstructed wholly diffused surface waters resulting from an extraordinary rainfall which did not flow in any natural watercourse, channel, draw, or drainway but in a sheet across plaintiff's almost level farm from which he suffered damages will not sustain a finding that defendant did not exercise ordinary care and so used its property as to unnecessarily and negligently injure plaintiff. To require defendant to provide unnatural and artificial outlets for all such wholly diffused surface waters would make it impossible for public power and irrigation districts to function, as contemplated by law, and put into full force and effect the civil law which is not recognized as operative in this state. In the case at bar we have evidence of what was done and damages resulting from the obstruction of wholly diffused surface waters from an extraordinary rainfall but when that is admitted no legal liability results.

Plaintiff has not cited any authority involving wholly diffused surface waters which would sustain a contrary view except from jurisdictions where the civil law prevails. The Nebraska cases cited are clearly distinguishable. In *Lincoln & B. H. R. Co. v. Sutherland*, 44 Neb. 526, 62 N. W. 859, the railroad built its roadbed and railway with a solid embankment across a natural draw. In *Fremont, E. & M. V. R. Co. v. Harlin, supra*, the railroad caused waste surface waters to be collected or concentrated in ditches and then

precipitated the same upon and over plaintiff's lands. In *Morse v. Chicago, B. & Q. R. Co.*, 81 Neb. 745, 116 N. W. 859, the railroad embankment intercepted the natural course of flow in a draw and carried it some distance in a ditch, then through a culvert and cast it upon plaintiff's land. In *Snyder v. Platte Valley Public Power and Irrigation District, supra,* the district not only changed the direction of a fixed natural watercourse but also concentrated the flow of surface waters into a narrow artificial channel across an overdrain or flume located on the land of another and cast it with great force upon plaintiff's land. In all of such cases the question of negligence was for the jury because the evidence sufficiently and clearly demonstrated the violation of some duty imposed by law self-evident of improper construction or operation and damages resulting therefrom, but in this respect they are not comparable with the case at bar.

We are of the opinion that the trial court rightly sustained defendant's motion to dismiss and the judgment is affirmed.

AFFIRMED.

Wenke, J., participating on briefs.

WENKE, J., concurring.

I concur with the opinion of the majority and especially with the ninth syllabus which correctly states the law applicable to all surface water. But because our opinions are not too clear on this subject matter as to wholly diffused surface water, which is the fact situation here, I think a further statement is desirable.

This state early adopted the common law rule as to surface water, which rule is stated in *Morrissey v. Chicago, B. & Q. R. Co.*, 38 Neb. 406, 56 N. W. 946, as follows: "Under the common law rule, surface water is regarded as a common enemy, and every landed proprietor has a right to take any measures necessary to the protection of his own property from its ravages, even if in doing so he throws it back upon a coterminous proprietor, to his damage, which the law regards as a case of *damnum absque injuria,* and afford-

ing no cause of action."

In connection with this rule of the common law our de-, cisions adopted what is often referred to as exceptions thereto whereby the proprietor, in making a defense on his own land, must exercise ordinary care and so use his own property as not to unnecessarily or negligently injure another. With the possible exception of the case of *Conn v. Chicago, B. & Q. R. Co.*, 88 Neb. 732, 130 N. W. 563, all the cases I can find that discuss these exceptions deal with surface water that had collected in natural drains, draws, or ditches or that had been collected and then dumped or discharged upon another's land.

In the case of *Conn v. Chicago, B. & Q. R. Co., supra*, the court discussed the principle here involved in connection with diffused surface water in the following language: "Subsequently, in a long line of decisions, unnecessary to cite, this court say that a proprietor may improve his premises in any proper manner, although he may thereby interfere with diffused surface water, without becoming liable to his neighbor, provided he does not unnecessarily or negligently injure him." From reading the opinion it is not certain that the case involved wholly diffused surface water.

However, in view of language contained in some of our decisions, such as in *Town v. Missouri P. Ry. Co.*, 50 Neb. 768, 70 N. W. 402, and the discussion contained in *Muhleisen v. Krueger*, 120 Neb. 380, 232 N. W. 735, there may be doubt as to whether the duty to not unnecessarily or negligently injure another applies to a proprietor in defending himself against wholly diffused surface water. The language referred to in *Town v. Missouri P. Ry. Co., supra*, is as follows: "On the other hand, there may be a flow of diffused waters over the surface of lands, which passes across the country in such condition, and nowhere gathers in large or restricted volume, or in any stream confined within banks or in a channel. This last may be said to be true surface drainage, as to which the general rule of law is applicable in its full force."

I do not think the rule, that a proprietor in making a de-

fense to surface water on his own land must himself exercise ordinary care and so use his own property as not to unnecessarily or negligently injure another, is any exception to the common law rule as to surface water hereinbefore set forth. It is a common law rule equally applicable to all surface water, including diffused surface water, which limits the application thereof. As this court stated in *Lincoln & B. H. R. Co. v. Sutherland*, 44 Neb. 526, 62 N. W. 859.

"The doctrine of this court is the rule of the common law, that surface water is a common enemy, and that an owner may defend his premises against it by dike or embankment, and if damages result to adjoining proprietors by reason of such defense, he is not liable therefor.

"But this rule is a general one and subject to another common law rule, that a proprietor must so use his own property as not to unnecessarily and negligently injure his neighbor." See, also, *City of Beatrice v. Leary*, 45 Neb. 149, 63 N. W. 370, and *Chicago, R. I. & P. R. Co. v. Shaw*, 63 Neb. 380, 88 N. W. 508.