ANDREW J. SAWYER ET AL., APPELLANTS, V. CHICAGO, BURLINGTON & QUINCY RAILROAD COMPANY, APPELLEE.

FILED FEBRUARY 5, 1916. No. 18566.

1. Waters: FLOOD WATERS: ACTION FOR DAMAGES: REVIEW. In an action to recover damages to lands, claimed to have been sustained by the negligent construction of railroad grades, bridges, yards, embankments and tracks, which were alleged to have held back the flood waters of Salt creek on plaintiffs' lands for such a length of time as to destroy a permanent stand of blue grass and alfalfa growing thereon, the verdict of a jury will not be set aside if it is sustained by competent evidence.

2. Instructions examined and found to contain no reversible error.

APPEAL from the district court for Lancaster county: P. JAMES COSGRAVE, JUDGE. *Affirmed.*

*Lincoln Frost, A. J. Sawyer, N. Z. Snell* and *W. B. Comstock,* for appellants.

*Byron Clark, Jesse L. Root* and *Strode & Beghtol, contra.*

BARNES, J.

Plaintiffs commenced this action to recover damages, to both personal property and certain real estate, alleged to have been caused by the flood of July 5 and 6, 1908.

The petition alleged, in substance, that the defendant railroad company negligently constructed its bridges, grades, railroad yards, tracks and other improvements across the

streams and in the basin into which they flowed just west
of the city of Lincoln, and thereby caused the flood waters
to overflow plaintiffs' lands and remain thereon a sufficient
length of time to drown out, kill and destroy the plaintiffs'
blue grass and alfalfa growing thereon, and wash away,
injure and destroy the fences, outbuildings, and other per-
sonal property situated on their said lands. The pleadings
were amended from time to time before the trial of the
cause, and the last amendment to the petition contained an
allegation that the defendant's Denver grade contributed
to plaintiffs' damages by holding the flood waters on the
land for more than 12 hours, thus destroying the stand of
alfalfa and blue grass growing thereon.

The defendant, by its answer, denied generally the al-
legations of the petition, and alleged that the rain storm
which caused the flood waters and injured the plaintiffs'
property was so severe and unprecedented as to amount to
an act of God, and pleaded the statute of limitations as to
the damages which were set forth in the last amendment re-
lating to the construction of the Denver grade because that
amendment related to a cause of action which accrued more
than four years before the amendment was tendered.

The reply was in effect a general denial of the allegations
of the answer.

A trial in the district court for Lancaster county re-
sulted in a verdict and judgment for the defendant, and
the plaintiffs have appealed, and contend, first, that the
judgment is not sustained by the evidence.

It appears that the plaintiffs' land is situated in Salt
creek valley, directly south and west of the city of Lincoln,
and about one and one-fourth miles south of what is known
as defendant's J street bridge. The evidence discloses that
the greater part of the city of Lincoln lies east of Salt creek,
which flows from south to north through Lancaster county,
and which rises near the southwest corner of the county,
about 23 miles from the city, at an elevation of 1,500 feet
above sea level. The head of Middle creek is 4 miles west
of Pleasant Dale, in Seward county, at an elevation of

1,500 feet. Oak creek heads at Brainard in Saunders county, at an elevation of 1,600 feet. The three streams converge in what is called the "Salt creek basin," at the west of the city of Lincoln where the elevation is only 1,140 feet above sea level. In the 11 miles above defendant's J street grade, Salt creek falls 70 feet, and Middle creek falls 20 feet in the last 3 miles of its course. Oak creek has a fall of 420 feet, 40 feet of which is in the last 5 miles before it enters Salt creek. A short distance below the mouth of Oak creek, Antelope creek, with a total fall of 300 feet in 9 miles, empties into Salt creek. Little Salt creek, with a total fall of 410 feet and a fall of 70 feet in the last 7 miles of its course, empties into Salt creek, and Stevens creek, also a stream of considerable size, joins Salt creek below the mouth of Antelope creek, while the fall of Salt creek north from the city of Lincoln is only about 8 feet in 12 miles of its course.

The testimony shows that on the 5th and 6th days of July, 1908, a heavy rain storm raged over the 681 square miles of area drained by the creeks above mentioned. This rainfall was unusual in its extent and intensity. At Palmyra, in Otoe county, southeast of Lincoln, 4.8 inches of rain fell in 24 hours. During the same period of time, at Crete, 2.81 inches of rain fell. On the campus at the University, in the city of Lincoln, 5.3 inches of rain fell. At Woodlawn, on Oak creek, 5 miles from Lincoln, on the morning of July 6, the six-inch rain gage was found to be running over. Eight miles west of Lincoln, on Middle creek, 8 inches of rain fell during this storm. When the rain began falling the ground was already saturated with water, and witnesses testified that just north of the mouth of Antelope creek the high water, at daylight on the morning of July 6, was backing up from the north, and so continued for some time. This condition existed about two miles north of defendant's embankment and grades. Several witnesses testified, in substance, that at 6 o'clock on the morning of July 6 the water south of the J street grade

was near the top of that grade; that it went over the grade at about 8:30 o'clock, and in 15 or 20 minutes it filled up the basin north of the grade, and from that time the water was all over the tracks both north and south, and was over the J street grade; that in the morning when they first noticed the water it was higher on the south side of.the track than it was on the north side, but at 2 o'clock in the afternoon it was nearly the same height on both sides of the grade, and was from 9 to 12 feet deep; that when the water was at its highest point it was as high on the north side as it was on the south side. It appears that the water commenced to recede about the middle of the afternoon of July 6; that it first ran to the north until about 10 o'clock in the forenoon, when the current ran back to the south; that about 5 o'clock in the afternoon it again ran to the north; that when the water was highest it was all over Middle creek valley and extended up that creek as far as one could see.

Defendant's engineers testified that the outlet of the Salt creek basin northeast of the city near Havelock was insufficient in size and extent to carry off the flood waters. Their testimony was corroborated by the topographical maps which were introduced in evidence, on which were shown the high water marks of the flood in question.

Mr. J. R. Hickox, a civil engineer, a graduate of Yale college, after describing the different elevations and the extent of the flood, testified that it would take about 76 hours for the flood water to flow out of the Salt creek basin, as the outlet near Havelock had a capacity to discharge only about 18,000 cubic feet of water per second.

As we view the record, there was sufficient evidence from which the jury could reasonably find that the extent of the flood in question was so great that the several improvements made by the defendant company in the Salt creek basin did not cause the water to remain upon plaintiffs' lands for more than 12 hours. The waters were caused to remain there by reason of the insufficiency of the outlet near Havelock.

Appellants assign error for the giving of instruction No. 1, in which the court stated that the defendant's improvements covered about 600 acres of land in the Salt creek basin. When these improvements are all taken into account, it is difficult to determine with any degree of certainty their full nature and extent, and it cannot be said that this instruction was so different from the facts which plaintiffs, by their evidence, attempted to describe as to amount to reversible error. The statement was merely an approximation and could not have influenced the jury to plaintiffs' prejudice. Again, the plaintiff tendered no instruction on that point and made no objection to the instruction when it was given.

Appellants also complain of instructions Nos. 8 and 9. The substance of these instructions was approved by this court in *Chicago, R. I. & P. R. Co. v. Shaw*, 63 Neb. 380, and *Conn v. Chicago, B. & Q. R. Co.*, 88 Neb. 732.

Appellants further complain of instruction No. 10, in which damages to personal property as well as to plaintiffs' real estate were mentioned. It appears that after the evidence was all taken, and just as the case was about to be submitted to the jury, plaintiffs dismissed the action so far as any claim for injury to personal property was concerned. Evidently this instruction was given because the jury had heard the evidence concerning the damages to personal property, and the giving of the instruction was not prejudicial error.

Complaint is made of instruction No. 11, for the reason that it does not contain the word "necessary" found in section 5944, Rev. St. 1913, which authorizes the railroad company to construct its line of watercourses. There is no claim that the construction complained of was not necessary. Therefore the plaintiffs could not have been prejudiced by leaving out the word "necessary," because that issue was not tried, and hence the omission of that word did not constitute error.

Instruction No. 13 is complained of because it is incomprehensible and argumentative and assumes a condition of

Sawyer v. Chicago, B. & Q. R. Co.

things not borne out by the evidence. It appears from the testimony of Mr. Loveland that the rain of July 6 and the previous day was greater by almost 100 per cent. than any rain covering the above described drainage area since the year 1887.

Other instructions complained of seem to be warranted by the evidence, and it was not error for the court to give them.

Finally, it is contended that the court erred in his instructions on the question of the statute of limitations. In the original petition plaintiffs did not claim any damage on account of the embankment known as the "Denver grade." That question was brought into the controversy, as above stated, by a rider, or amendment, to the petition, which was filed on the 4th day of November, 1913, and during the trial of the case. It brought into the case a new and different cause of action. Therefore the defendant pleaded the statute as against plaintiffs' Denver grade theory. That defense was good because more than five years had elapsed since the damage and before the filing of the amendment. *Westover v. Hoover,* 94 Neb. 596.

In conclusion, this court has twice decided on evidence substantially the same as that found in the record in this case that the defendant was not liable in damages for the flood of 1908. *Albers v. Chicago, B. & Q. R. Co.,* 95 Neb. 506; *Alt v. Chicago, B. & Q. R. Co.,* 96 Neb. 714. It seems clear that the extent of the flood of July 5 and 6, 1908, by which the plaintiffs were damaged, occurred from natural causes, and not by reason of the construction of defendant's bridges, embankments or grades.

Finding no reversible error in the record, the judgment of the district court is

AFFIRMED.

SEDGWICK, J.  I think that some of the instructions were erroneous.