OMAHA HORSE RY. CO. *v.* CABLE TRAM-WAY CO. OF OMAHA.[1]

*(Circuit Court, D. Nebraska.    October 25, 1887.)*

1. COURTS—FEDERAL JURISDICTION—FEDERAL QUESTION—RETENTION OF CAUSE.
     A horse-car company, claiming to have an exclusive franchise in Omaha, Nebraska, of which state it was a resident, sought in the federal courts to enjoin a cable company, also a resident of that state, from laying its tracks in Omaha, on the ground that the act incorporating the cable company was a state law impairing the obligation of contracts.    The court held that the exclusiveness of the plaintiff's franchise was limited to a mere horse railway, but the constitution of the state forbidding the *damaging*, as well as the taking of private property for public use without compensation therefor, referred the case to commissioners to report what damage, if any, the plaintiff would suffer by the laying of the cable line.    *Held*, that a real, substantial federal question having been involved in the case at the outset, the elimination of that question did not oust the court of jurisdiction of the question of damages.
2. EMINENT DOMAIN—DAMAGE TO PROPERTY—IMPAIRMENT OF FRANCHISE PRIVILEGE.
     Section 21 of the Bill of Rights of the Nebraska constitution of 1875 provides that "the property of no person shall be taken or damaged for public use without just compensation therefor."    *Held*, that where the tracks of a street railway, owning an exclusive franchise for that mode of carriage, were paralleled by those of a cable tram-way, the latter having obtained from the owner of the soil the right to occupy the streets, the property of the former

was "damaged" and not "taken," and the provisions of Comp. St. Neb. c. 16, § 95, for ascertaining damages, being applicable only where property is "taken," damages might be assessed in an injunction suit between the parties, although they had failed to agree upon the amount of compensation.

3. SAME.

The charter of a street railway company gave it the exclusive right for 50 years to operate *horse cars* in Omaha, Nebraska; at the expiration of that time the franchise and corporate property were to revert to the city. A *cable company*, when the charter had still 30 years to run, paralleled on some streets the tracks of the railway company, and crossed them on others. *Held*, in proceedings by the latter for compensation for its property so "damaged," under the Nebraska constitution, of 1875, that the cable company was not liable for any injury flowing from the mere matter of competition, or from the fact that the better facilities of the new road attracted passengers from the old; and that the crossings worked no damage; but that the loss of passengers to the railway company caused by the inconvenience of access at those points of the route where the cable cars ran between the street cars and the sidewalk was, though difficult of accurate estimation. a legitimate matter of damage.

4. SAME.

It appeared that on those portions of the route of the street railway paralleled by the cable, the number of passengers carried by the cars would be reduced 75 per cent., and that of the 75 per cent. thus secured by the cable, 70 per cent. would be due to the competition, and but 30 per cent. to inacessibility. It was also shown that the operating expenses of the railway company were 50 per cent. of its earnings. *Held*, that 30 per cent. of the 75 per cent. of the passenger traffic so diverted should be taken as the basis of calculation and the result cut down 50 per cent. for the present year, and that the amount so ascertained be computed at 10 per cent. as damages for the unexpired years of the franchise.

5. SAME.

Where a proposed public use causes to property, no part of which is taken, an injury of such a character as, if it accrued when a portion of the property was taken, would form a proper element of the damages to the part not taken. there is a "damage" within the scope and protection of the constitutional provision, and the owner is entitled to compensation.

6. REFERENCE—HEARING—REMAND FOR ADDITIONAL TESTIMONY.

Where the opinion advising a reference to commissioners to report the plaintiff's damages plainly indicates the elements of damage to be considered, the hearing will not be sent back for additional testimony on one point of injury on the ground that the party moving therefor had but brief notice of the meeting of the commissioners; and this is especially so when, after the testimony of the other party upon that point had gone in, the movant asked for no delay, but introduced all the evidence it desired.

7. INJUNCTION—FURTHER RELIEF—ASSESSMENT OF DAMAGES.

In a suit for injunction, where the prayer of the bill is not only for the injunction but for other and further relief, the prayer is broad enough, a case being made out, to include assessment of damages.

In Equity. On exceptions to commissioners' report, etc.

*G. E. Pritchett, Thurston & Hall*, and *J. M. Woolworth*, for complainant.

*J. C. Cowin*, for defendant.

BREWER, J. This case is now submitted on exceptions by both parties to the report of the commissioners, and on certain motions and applications connected therewith. A brief review of the facts connected with this litigation will help to clearly understand the present questions. The plaintiff holds under special charter, granted by the territory of Nebraska, an exclusive franchise for the building and operating of a horse railway in the city of Omaha, for a period of 50 years from the first of

June, 1867. At the commencement of this suit it had constructed and in operation over 18 miles of railway. The defendant is a corporation organized under the general acts of the state of Nebraska, and having received permission from the city of Omaha, at an election held therefor, commenced the construction of a cable tram-way on certain streets therein. This bill was filed to enjoin such construction on the ground that it infringed upon the exclusive franchise of plaintiff. After examination, I held that the exclusive rights of plaintiff were limited to a mere horse railway, and did not include all modes of street railway carriage, and therefore that the defendant was not infringing upon such exclusive rights. I also held that, as the constitution of Nebraska forbade the taking or damaging of private property for public use without just compensation therefor, the plaintiff was entitled to recover of the defendant any proper damages sustained by the construction of such cable tram-way; and I directed that a commission be appointed to examine and report such damages. That commission was named by my brother DUNDY, made their examination, heard all the testimony that was offered by either party, and in June last filed their report.

One motion of the defendant is to dismiss these proceedings with reference to the assessment of damages, on the ground that this court has no jurisdiction of such matter. Both parties are citizens of Nebraska, and the jurisdiction of this court was invoked on the ground that the state of Nebraska had passed a law impairing the obligation of its charter contract with the plaintiff. That question having been decided against the plaintiff, defendant insists that the case necessarily went out of this court; that the matter of damages is a question purely under state laws, of which this court could not take jurisdiction. It further insists that the prayer for relief in plaintiff's bill, being for an injunction, is not broad enough to include the assessment of damages. I think the defendant is wrong in both of these propositions. It is the settled law of the supreme court that, when a case is presented involving a federal question, the jurisdiction of the court attaches to the whole case, and is not limited to the mere decision of that single federal question. *Tennessee* v. *Davis*, 100 U. S. 257; *Railroad Co.* v. *Mississippi*, 102 U. S. 135. In this last case, Mr. Justice HARLAN, speaking for the court, says that it is settled law in that tribunal—

"That it is not sufficient to exclude the judicial power of the United States for a particular case, that it involves questions which do not all depend on the constitution or laws of the United States; but, wherein a question to which the judicial power of the Union is extended by the constitution forms an ingredient in the original causes, it is within the power of congress to give the circuit courts jurisdiction of that case, although other questions of fact or of law may be involved in it."

Counsel's suggestion that any case might be brought in this court by the mere assertion of a right under the federal constitution, is easily answered. No mere assertion that a federal question exists, or that a right is claimed under the federal constitution, is of itself sufficient to give jurisdiction; it must appear that there is some real, substantial federal ques-

tion involved. Again, inasmuch as the prayer for relief contains also the general prayer for other and further relief, it is familiar law that the court may award such other relief as is justified by the facts stated in the bill, and may fairly have been considered within the contemplation of the parties in the litigation. This motion of the defendant must therefore be overruled.

On the other hand, plaintiff asks, practically, that the court change its decree heretofore rendered, and grant an absolute injunction; and this on the ground that the court has found that the plaintiff's property would be damaged by the construction of defendant's tramway; and that, under the clause in the Nebraska constitution heretofore referred to, it is entitled to compensation therefor. Plaintiff urges that no right of eminent domain has been granted to defendant, that the same section of the Nebraska constitution prohibits the taking and the damaging of private property for public use, without just compensation, and that as no private property can be taken for public use by any party to whom the right of eminent domain has not been given, so no private property can be damaged except under the same circumstances; and hence that, unless the parties voluntarily agree upon the amount of compensation, the construction of the tram-way should be absolutely enjoined. I think this is an error. In the first place, the Nebraska constitution does not require payment in advance for either the taking or damaging of private property for public use; in the second place, defendant has obtained from the owner of the soil the right to occupy the streets, and none of the plaintiff's property is taken. In the third place, the supreme court of Nebraska in two cases (*Railroad Co.* v. *Reinhackle*, 15 Neb. 279, 18 N. W. Rep. 69, and *Railroad Co.* v. *Fellers*, 16 Neb. 169, 20 N. W. Rep. 217,) have drawn the proper distinction between cases of taking and those of damaging property, and held that the statutory provisions apply simply to the case of taking, and that in the other case an action for damages will lie.

Defendant also moves the court to send the hearing back to the commissioners, or to a master, in order that it may offer additional testimony upon one point, and that is as to the number of passengers which daily get on or off plaintiff's cars on those streets, or portions thereof, in which plaintiff's tracks are paralleled, or proposed to be paralleled, by the defendant's tram-way. It urges in support of this that it had but brief notice of the meeting of the commissioners, and that it had no knowledge of what matters the commissioners were going to consider in forming their estimate of the amount of the damages. To this it may be replied that it asked no delay from the commissioners, it offered all the testimony which it then desired, and that this matter was plainly called to its attention in the opinion of the court directing the appointment of the commissioners. The conclusions to which I have come in reference to the report of the commissioners suggest also additional reasons for overruling this motion.

And now I come to the report of the commissioners, and, without naming in detail the various exceptions of the two parties, respectively,

I shall notice the facts, make some comments on the question of damages, and state the conclusions to which I have come.

Referring to the facts as heretofore stated, the plaintiff has 18 miles of railway. It also owns 62 cars, about 50 of which are in daily use; the daily carriage of passengers ranges from 15,000 to 18,000 persons; the average daily receipts in summer are about $800; those in June last, estimating the last three days as equal to the others, amounted to $24,-874.17; in winter the receipts are about 25 per cent. less; the operating expenses are from 50 to 60 per cent. of the earnings; the value of the track varies from $10,000 to $12,500 per mile. It will thus be perceived that the net earnings run from $200 to $400 a day. The franchise of the plaintiff includes all the streets, with perhaps a single exception; the permission to the defendant covers only a limited number of streets; the commissioners, besides hearing all the testimony that either party offered, made a personal examination of the various lines, completed and projected, of both parties; the defendant's tramway crosses the plaintiff's track in one or two places; the commissioners considered that these crossings worked no damage, and allowed nothing therefor. They arrived at their estimate of damages in this way: As heretofore stated, in two places, and for a few blocks in each, the defendant's tramway occupies the same street as the plaintiff's track, being placed in that portion of the street between the plaintiff's track and the sidewalk. Passengers going to the plaintiff's cars must cross the defendant's tramway, over which will be passing, with more or less speed and frequency, defendant's cable cars. This naturally would operate to prevent some from seeking plaintiff's cars, when by the use of defendant's cars they can be carried to the same, or nearly the same, place. This inconvenience of accessibility was considered a legitimate matter of damage and compensation. They state their conclusions as to one place in this way:

"We find the average number of passengers traveling upon the cars of the plaintiff company on Tenth street, where its said road is paralleled by the defendant company, to be (1,266) twelve hundred and sixty-six per day; and the revenue per day derived from said number of passengers so traveling to be sixty-three and 30-100 ($63.30) dollars. From all the testimony offered and available by the commissioner, it is found that seventy-five (75) per cent. of the last above-stated amount would be carried by the cable company, defendant, and twenty-five (25) per cent. would be carried by the plaintiff company. Of that amount carried by the said cable company, defendant, we find seventy (70) per cent. of the amount carried by it to be so carried as the result of competition, which is not by the commission considered; and thirty (30) per cent. of the amount thus carried to be carried as the result of inaccessibility, and difficulty of reaching the plaintiff's cars and tracks,—by reason of the location of defendant company's tracks outside said plaintiff's line, and of cars moving upon and up and down the same. Your commissioners find that thirty (30) per cent. of seventy-five (75) per cent. of the sum of ($63.30) sixty-three and 30-100 dollars is the sum of fourteen and 25-100 ($14.25) dollars."

They proceed in the same way as to the other place of mutual occupation of the street, and from the two conclude that the plaintiff's damages amount to $23.65 per day, or $8,632.25 per year, which, for the

entire period of plaintiff's franchise, they think should be paid by the defendant to the plaintiff. It is upon this last matter that the defendant seeks to offer additional testimony, and files an affidavit that the average number of passengers getting on and off the plaintiff's cars at the first place named does not exceed 100 every 24 hours; and at the other, 150 every 24 hours.

Now, these are all the material facts detailed, or which the commissioners had before them for consideration, other than the information obtained from personal examination. Upon these facts I remark:

1. That while it seems clear that the plaintiff is damaged in such a manner that it ought to receive compensation, and that the case is one that comes within the purview of the constitutional provision, it is equally clear that it is difficult to point out the specific matters which are proper for consideration; and, also, when those matters are determined, to ascertain with any decree of accuracy the amount of the damage. Any injury which flows from the mere matter of competition, or from the fact that the better facilities of the new road attract passengers from the old, must be excluded; for if the defendant has a right to construct its road, as has been decided, no one has a right to complain of the better facilities or the greater inducements to passengers it provides. The greater speed and comfort of railroad travel will speedily destroy the business of a prior stage line, but this give no right of action to the latter, and furnishes no basis of damages. It is simply one of the inconveniences which attend the matter of improvement, of which no individual can complain; and the commissioners in their report have endeavored to separate this matter of competition from that of inaccessibility.

2. I remark that the basis of compensation suggested by the defendant is obviously inaccurate. It suggests the difference between the value of plaintiff's property before the completion of defendant's line, and that after. But this would include all that damage which flows from competition; and, when the new is very much better than the old, competition will practically destroy the value of the old. As between the cable and the horse railway, I have seen in Kansas City the effect of this, for there the superior speed and comfort of the cable road has practically destroyed the horse railway system. And to hold that the value of this system thus destroyed should be charged against the cable roads, would impose a burden too monstrous to be thought of. Consider for a moment the value of a property whose earnings are as vast as those of this property are shown to be, and think of charging that value as the burden of compensatory damages upon a cable railway system whose operation sweeps away the bulk of those earnings; large as are the damages awarded by the commissioners in this case, they would be but as a mere trifle compared with those which would be awarded upon this basis.

3. The difficulty of accurately estimating the damages rests not alone upon the present condition, but depends also upon the facts that the future is an element which must be taken into consideration. Who can say as to any given passenger what motive prompts him to take the car of the one road or of the other? How much is he affected by a desire

to avoid the risk of crossing the tracks of the one road to reach the cars of the other, and how much longer distance is he willing to walk at the end of his railroad traveled, rather than incur such risk? How much is he influenced by the superior speed and comfort of travel on the one over' that on the other? These are questions incapable of exact determination as to the individual, as well as to the multitude of passengers. We can only form an estimate from consideration of the difficulty of access, and the risk of accidents. Further, who shall say what the future of Omaha will be? We find there to-day a city of from 60,000 to 80,000 people, growing rapidly, with vast business interests and commercial industries, and who can foretell what in the next 30 years will be the population of that city, or the magnitude of the street travel therein? And again, who shall say that the cable railway is the perfection of street carriage? May not to-morrow the electric railway or some other improvement in street carriage supplant both horse railway and cable, so that that system, which to-day seems to promise so much of profit, and to be such an injury to the horse railway system, may to-morrow itself be of little value, and no real competitor or injury to it? These and many other like considerations make it clear that no accurate measurement of the damages caused to the plaintiff's system by the construction of the defendant's cable roads can be made.

4. I remark that the lack of certainty in the measurement of the damages is no reason for refusing compensation. The law is full of instances in which there is the same lack of certainty, and where it is simply left to the sound discretion of the jury to determine what, under the circumstances, is fair and reasonable compensation. Take the common case of an injury to a person—the loss of a limb. The value of such limb, the damage from such injury, cannot be ascertained by any mathematical process. Life or limb and money are not convertible terms. There is no principle in mathematics which links the one to the other; and yet suits are maintained every day, and damages awarded, for just such injuries. All that can be done in those cases is to place the circumstances —the facts of the injury—before the jury, and leave them to say what, in their sound discretion, is just and fair compensation. All that is necessary is that there be a certainty of damage as the direct result of the act complained of, and that it does not belong to that class of damages known in the law as *damnum absque injuria*.

5. I remark that, to my mind, there is in this case a certainty of damages other than those flowing from competition, which are the direct and inevitable result of the building of defendant's cable system, come within the purview of the constitutional provision, and for which the plaintiff is entitled to compensation. Formerly all compensation was limited to cases in which property was taken. That was the scope of the constitutional provisions, but the often manifest injustice of such limitation has led to constitutional action in many states extending compensation to cases in which property is damaged, although none is actually taken. Several cases have arisen in which has been discussed the question of what injuries to property give, under such a constitutional provision, the

·right to compensation. One case was before me, that of *McElroy* v. *Kansas City*, 21 Fed. Rep. 257. It is futile to attempt a general answer, or to lay down a rule to determine all cases. One proposition may be affirmed. Whenever a proposed public use causes to property, no part of which is taken, an injury of such a character as, if it accrued when a portion of the property was taken, would form a proper element of the damages to the part not taken, there is a damage within the scope and protection of this constitutional provision, and entitling the owner to compensation. Take this illustration: A railroad company condemns a right of way through a farm; the value of the strip of land thus taken ·is always awarded as damages; so, also, the injury which results to the ·balance of the farm by reason of the appropriation of the strip taken to the contemplated use; and in this injury is considered the difficulty of passage, the impairment of free access between one part of the farm and the other. The presence of a railroad track, with its moving trains through the middle of a farm, causes both risk and inconvenience in passing from one part of the farm to the other. And this inaccessibility, as we may call it, forms one element of damages. Another illustration of a similar nature. Suppose the owner of a lot in the city builds a store on the rear of that lot, leaving vacant ground between it and the street. If a railroad company condemns a right of way over his vacant ground in front of his store, thus interfering with freedom of access from the street, the same rule of estimating damages would apply, and the inaccessibility would be declared a proper subject for compensation. This principle controls the case at bar. A railroad track, with passing cars between plaintiff's track and the sidewalk, the ordinary passage-way of foot passengers, impairs more or less access to plaintiff's cars. It is a direct hindrance and injury to accessibility thereto. Why should this hinderance and injury be not a legitimate element of damages, upon the same principle that controls in the illustrations cited? That a right is given defendant to lay its track does not destroy the fact of the injury, does not deprive plaintiff of a right to compensation, any more than the right acquired by the railroad company to construct its track in the cases cited. If it be said that running a line of omnibuses would operate in the same way, I reply that that is an ordinary use of the streets, open to all, and requiring no special permission; there is no appropriation to any public use; it is only a matter of increased travel. But a railroad track is a new use; perhaps not such a one as requires compensation to the adjoining lot-owners, but one special, not free to all, and acquired only through the direct assent of the public authorities.

I conclude, therefore, upon the rule above laid down, that the commissioners were right in the manner of ascertaining compensation. As to the amount, they have assumed that the carriage of the passengers, prevented by inaccessibility from traveling in plaintiff's cars, costs nothing; the costs of carriage evidently being considered paid by the other passengers. This is not a fair way of estimation. Who can say that this diminution in the number of passengers will not be accompanied ·by a corresponding reduction in the number of cars, and in the expenses

of operating the road? The expense of carriage is one-half the receipts, and this should be considered as applicable to every passenger. In other words, one-half of the nickel received from each passenger goes to pay the cost of his carriage. The net earning from each is only two and one-half cents. This is all that ought fairly to be considered. I shall therefore divide the amount allowed by the commissioners, and hold that the damage is only $4,316.12½ per annum. My brother DUNDY suggests that the true way is to ascertain the present value of the damages for the unexpired years of the plaintiff's franchises computed at 10 per cent., and award that as the amount of damages to be paid. I think of no better way, and agree with him, only holding that the amount should be divided as above stated. In coming to this conclusion, I am well aware that this cannot be considered as mathematically accurate, for reasons heretofore stated; nor do I affirm that the commissioners' estimate of passengers is absolutely correct. Indeed, the question is, does it affirmatively appear that they have erred? and on this it must be remembered that they had the benefit of a personal examination. I have reached my conclusion in the same way that a jury arrives at its verdict in a personal injury case, and cannot hold that they erred, save in the one matter pointed out. Although the amount thus awarded may seem large, yet when I consider all the facts and circumstances, the certain and vast damage which defendant's cable road will inflict upon plaintiff's property, I cannot think the amount unfair or unreasonable, especially in view of that clause in section five of plaintiff's charter which provides that at the end of 50 years the roads, and depots, and other equipments shall revert to the city of Omaha.

The clerk will compute the present value from the date of entering this decree to the termination of plaintiff's franchise, and the order will be that amount is awarded as damages to the plaintiff for all the injuries done, or to be done, by the construction of defendant's cable road in all the streets which it is now authorized to occupy. All exceptions, except as above indicated, and all motions and applications, will be overruled and denied. Costs will be charged against the defendant.