RACHAEL I. SNYDER, APPELLEE, V. PLATTE VALLEY PUBLIC POWER AND IRRIGATION DISTRICT, APPELLANT.

2 N. W. (2d) 327

FILED FEBRUARY 6, 1942.   No. 31208.

*Beeler, Crosby & Baskins, Robert B. Crosby* and *Horace E. Crosby,* for appellant.

*Hoagland, Carr & Hoagland, contra.*

Heard before SIMMONS, C. J., EBERLY, PAINE, CARTER, MESSMORE and YEAGER, JJ.

YEAGER, J.

This is an action for damages in two causes of action, instituted by Rachael I. Snyder, plaintiff and appellee, against

the Platte Valley Public Power and Irrigation District, a corporation, defendant and appellant. From a verdict in favor of plaintiff and against the defendant in the amount of $3,555, and judgment for $3,866.62, on the first cause, and from a verdict in the amount of $1,345, and judgment in the amount of $1,448.38, in favor of plaintiff and against the said defendant on the second cause, the defendant has appealed. The difference between the respective verdicts and judgments is represented by interest computed by the court rather than by the jury.

The plaintiff is the owner of certain lands in Keith county, Nebraska, described as follows: West half of the northeast quarter (W½ of NE¼), and east half of the northwest quarter (E½ of NW¼), of section twenty-eight (28) ; all of section twenty-one (21), and all of fractional section sixteen (16) lying south of the North Platte river, all located in township fourteen (14) north, range thirty-six (36) west of the sixth P. M. The entire tract consists of approximately 1,000 acres. The defendant, a public corporation organized under chapter 86, Laws 1933, sections 70-701 to 70-715, Comp. St. Supp. 1941, obtained, on January 31, 1935, from the plaintiff options for a right of way across the two described portions of section 21, and later, on May 4, 1935, obtained warranty deeds for the right of way described in the option agreements, for which defendant paid an agreed consideration of $2,100. The right of way was 250 feet in width and totaled approximately 23.22 acres. The right of way began at the west line of section 21 at a point not far north of the southwest corner of the section, and from that point extended eastward and slightly south, and at a point about a quarter of a mile west of the southeast corner of section 21 it crossed in a southeasterly direction into and across the east half of the northeast quarter of section 28, which land belonged to one Elizabeth Bassett. The right of way was along the foot of the hills which were to the south and it crossed the outlets of three canyons, two of which were on the lands of plaintiff and one on the lands of Elizabeth Bassett. This last

crossing was to the south of plaintiff's land and was across the outlet to a canyon which normally drained onto lands of plaintiff in section 21.

The defendant obtained the right of way for the purpose of constructing thereon an inlet or supply canal to carry water for its corporate purposes from points west to points east of the lands of plaintiff. According to plan a canal was constructed on the right of way prior to the crop year of 1936, and it has been maintained henceforth.

One of the canyons is near the west side of section 21. This canyon has a drainage area of about 390 acres. In the gravel bed of this canyon, at the time of the construction of the canal, the defendant constructed two 5-foot by 5-foot openings, culverts or underdrains under the canal and generally from south to north to carry away the drain-off water from the drainage area mentioned. The water was carried across to the lands north of the right of way. Farther east is another canyon with a drainage area of 118 acres. On the gravel bed of this canyon, and for the same purpose, a concrete box culvert or underdrain, 5 feet by 4 feet in dimension, was constructed. At the right of way crossing on the Bassett land, and for the same purposes as culverts were constructed, an overdrain or flume was constructed. This overdrain or flume emptied onto the Bassett land, but the water flowed onto the lands of plaintiff in section 21. It took care of a drainage area of 580 acres. The flume was 15-6/10 feet wide and 5-5/10 feet high.

The plaintiff's first cause of action is for damages to her land on account of claimed negligence in the construction and maintenance of the two culverts and the flume. Her second is for damages to crops upon these same lands for the years 1936, 1937 and 1938. Her two sons were tenants and owners of the crops, but they have assigned their cause of action to the plaintiff.

Among the many errors assigned by the defendant as ground for reversal is the motion made at the conclusion of the introduction of plaintiff's evidence, and renewed at

the conclusion of all of the evidence, for directed verdicts in favor of the defendant. Among the reasons given as to why this motion should have been sustained is the assertion that there was a total failure of any evidence from which the jury could find that the defendant had been guilty of negligence in the construction, operation or maintenance of its siphon and flume structures or its inlet canal. It is considered advisable to discuss this assignment first.

To begin with there is no contention that the inlet or canal on the right of way was not constructed properly and in accordance with the best engineering principles and practices. It is not contended that the drains are insufficient to take care of the drainage flow for which they were designed. It is sufficiently shown that the bottoms of the two underdrains are in and not above the level of the gravel beds in the outlets from the two canyons, and that they follow the direction of the gravel beds. The evidence shows that the overdrain is at the level of the gravel bed in the outlet of the other canyon. There, however, is a dispute as to whether or not it follows the exact direction of the old outlet. The evidence indicates that the gravel beds of the canyons marked the lowest points in the old outlets.

Before the construction of the inlet canal and the three drains in question, the water coming out of the canyons was not confined to narrow passages as it came down from the canyons. Of course it spread out to widths which depended upon the amount of water coming down at any given time.

The plaintiff alleges that prior to the incidents complained of the water came down and spread out over her lands north of the right of way, and irrigated large areas beneficially to her. She says that by reason of what was done the water was concentrated in narrow channels, which caused its velocity in passage to be so great that channels were cut in her lands, which channels interfered with farming operations, the spread of waters for irrigation purposes was prevented, crops were destroyed by flood waters and other crops failed in part on account of lack of the previous man-

ner of irrigation, since the waters flowed across instead of spreading out over the lands.

The negligence claimed is that the defendant failed either to retard the flow of the flood waters above or to the south of the right of way, or to place retards below or to the north which would cause the water to spread or fan out over the lands of plaintiff as it had done before the construction of the inlet canal and the drains thereunder and thereover.

As has already been pointed out, the right of way over section 21 was purchased by the defendant. The defendant contends that the purchase carried with it all of the incidents of taking by eminent domain or condemnation, and hence an action for damages is not maintainable because all of the damages complained of were of the kind and character properly determinable in condemnation proceedings. It is conceded by the plaintiff that the purchase of the right of way did carry all of the incidents of taking by eminent domain in so far as the question of damages by reason of construction is concerned. We then turn to the issues determinable under eminent domain.

It is well settled by the decisions of this court that the final award in a condemnation proceeding for the acquisition of a right of way is conclusive upon the parties thereto as to all matters necessarily within the issues joined, although not formally litigated. *Atchison & N. R. Co. v. Forney,* 35 Neb. 607, 53 N. W. 585; *Churchill v. Beethe,* 48 Neb. 87, 66 N. W. 992; *Bunting v. Oak Creek Drainage District,* 99 Neb. 843, 157 N. W. 1028; *Psota v. Sherman County,* 124 Neb. 154, 245 N. W. 405.

The only issue contemplated by eminent domain which is important here is the issue of damages, or more properly the incidents of damage which are properly and conclusively presumed to have been before the court in condemnation proceedings, and which may not be considered later in an action for damages.

This matter has been before this court previously in other cases. In *Churchill v. Beethe, supra,* it is stated: "It is

now the settled law of the state that for all injuries which may arise on account of the proper construction or future operation of an improvement, an adjoining proprietor must be compensated in the original condemnation proceedings."

In *Atchison & N. R. Co. v. Boerner,* 34 Neb. 240, 51 N. W. 842, it is stated: "In such case the damages are to be appraised by commissioners appointed by the county judge for that purpose, and if either party is dissatisfied with the award, an appeal may be taken to the district court. Boerner was entitled to have all proper elements of damage considered by the commissioners, and, if they failed to do so, he cannot afterwards maintain an action to recover damages thus omitted, which were necessarily involved in the issues in the condemnation proceedings, and which he was bound to present for their consideration therein." Other cases holding likewise are: *Omaha & R. V. R. Co. v. Moschel,* 38 Neb. 281, 56 N. W. 875; *Omaha S. R. Co. v. Todd,* 39 Neb. 818, 58 N. W. 289; *Fremont, E. & M. V. R. Co. v. Bates,* 40 Neb. 381, 58 N. W. 959; *Chicago, B. & Q. R. Co. v. O'Connor,* 42 Neb. 90, 60 N. W. 326; *Psota v. Sherman County, supra.*

These cases state the rule. The question of whether or not the situation and incidents here complained of come within the rule must now be answered. The evidence clearly indicates that the passages provided for the water were constructed with skill, and that they were sufficient to take care of the anticipated flow of water, so that the requirements of law with reference to proper construction were complied with. The evidence further clearly indicates that there was at the time of construction a necessity to provide for the flow of these waters across the right of way not only that outlets might be provided, but also that the structure on the right of way should be put to its contemplated use and preserved in serviceable condition. This was of necessity within the contemplation of the parties. The evidence further shows that provision was made for the waters to cross at or substantially at the places they formerly crossed but in narrowed channels, and that when

the volume was great they crossed with increased velocity. Would the matter of damage caused by narrowed channels and increased velocity of water have been a matter for proper consideration in condemnation proceedings?

No case precisely in point on this question has been found, but some significant statements have been found in cases dealing with this subject.

In *Churchill v. Beethe, supra,* which is a highway condemnation case, the court said: "The owner of adjoining lands is entitled to compensation not only for such injuries as might result from the use of the land appropriated in its natural state, but for all which would result from a proper construction, improvement, and maintenance of the highway, taking into consideration such embankments, cuts, bridges, culverts, and ditches as shall be required or warranted for the purpose of a proper construction and maintenance. Applying these principles to the present case, it would seem that the fill and culvert are not only a proper, but apparently a necessary improvement, for the purpose of properly maintaining the highway; and while, if plaintiff's lands will suffer an injury thereby, he was entitled to compensation therefor, it must be presumed that he received such compensation, or at least had an opportunity to receive it, when the highway was originally constructed." This statement is quoted with approval in *Psota v. Sherman County, supra.*

The reasoning of these cases appears to be peculiarly applicable here. It is difficult to understand how any other conclusion could be reached. Only casual observation without resort to technical engineering principles pointed to the fact that attached to the contemplated use of the right of way was the construction of the inlet canal, and that with its construction the law of gravity required that outlets should be provided over or under the canal to provide outlets for drainage for the drainage areas to the south, and that necessarily this flow would empty onto the lands of plaintiff to the north of the right of way. Otherwise the right of way would have been useless.

In addition to the presumption which must be indulged in favor of the defendant under the rule announced in *Churchill v. Beethe, supra,* the record here discloses certain evidence indicating that the question of damage of some kind or character to plaintiff's land was in the minds of the parties at the time of purchase of the right of way. Two vouchers (exhibits G and I), each in part payment of the purchase price, were issued to plaintiff and endorsed by her. The following appears on the face of exhibit G: "Purchase price including damages to the remaining property," and the following appears on the face of exhibit I: "Total purchase price including damages to the remaining property."

As to the damage sustained by the plaintiff, if any, by reason of the drains crossing the right of way which was purchased from plaintiff by the defendant, we hold that no action will now lie therefor, since this matter must be presumed to have been in the minds of the parties and to have been compensated for at the time of the purchase. This holding applies only to the outlets which cross the right of way through the lands of the plaintiff. Only two of the outlets are on the lands of plaintiff. They are the two underdrains. The overdrain or flume, which is the eastermost of the three outlets of which complaint is made, is not on the right of way or lands sold or owned by plaintiff, but is across the canal of defendant and at a designated point on the lands of Elizabeth Bassett.

With reference to the outlet on the Bassett land, it is not suggested that plaintiff had anything to do with this either by way of right of way sale or in condemnation proceedings to which she was a party, nor is any rule of law set forth which would bar a right of recovery by plaintiff for damage to lands or crops, if any was sustained, by reason of negligent construction or maintenance of this structure. No reason, therefore, is apparent why she should not have her day in court on proper pleadings to determine the question of whether or not she has been damaged by reason of this structure.

The verdicts and judgments here cannot be allowed to stand in whole or in part, since the proof of damage was entire as to all three of the drainage outlets, both as to lands and crops. There is no means or method whereby a separation can be made on the record presented.

Since this case may be returned to the district court for a new trial on the phase indicated, it seems advisable for the guidance of the district court to discuss another assigned error. The defendant complains that the trial court did not submit the proper rule to the jury for assessment of damages to growing crops.

This has always been a troublesome question and is one not capable of exact definition. There is a general rule of law coupled with two rules of evidence which should always be borne in mind in cases involving this question. In the case of *Gledhill v. State*, 123 Neb. 726, 243 N. W. 909, the authorities are collected and the rules discussed. It is indicated in the opinion there that the rule is that the measure of damage to matured crops destroyed is the actual value. This rule is followed by a rule of evidence that actual value may be proved by evidence of actual value of other matured crops of a like kind grown during the same period on portions of the same or adjoining land under similar conditions. This rule of evidence is also made applicable to unmatured crops where a reasonably certain comparison can be made. It is further observed in the opinion, by quotation from 17 C. J. 785: "Damages based upon the value of unmatured crops are analogous to profits lost, and are governed by the same rule precluding recovery in cases of either uncertainty or remoteness. The question of whether damages based on the result of an unmatured crop are speculative must be determined by whether there is sufficient data to determine with reasonable certainty the probable value it would have had if matured." We would add that within these rules if the evidence is insufficient to prove value of growing crops to a reasonable certainty it must be rejected by the court as speculative.

The judgment of the district court is reversed and the

plaintiff's petition dismissed as to that portion wherein she seeks damages by reason of the two drainage outlets on the right of way across her lands, and reversed and remanded without prejudice, and with leave to amend and to have a new trial on issues involving damages to lands and crops by reason of the drainage outlet in question which was constructed on the lands of Elizabeth Bassett.

REVERSED AND REMANDED IN PART AND
REVERSED AND DISMISSED IN PART.