RACHAEL I. SNYDER, APPELLEE, V. PLATTE VALLEY PUBLIC
POWER AND IRRIGATION DISTRICT, APPELLANT.

13 N. W. 2d 160

FILED FEBRUARY 25, 1944.   No. 31667.

Beeler, Crosby & Baskins, Robert B. Crosby and Horace E. Crosby, for appellant.

Hoagland, Carr & Hoagland, contra.

Heard before SIMMONS, C. J., PAINE, CARTER, MESSMORE, YEAGER, CHAPPELL and WENKE, JJ.

YEAGER, J.

This is an action for damages in two causes of action, instituted by Rachael I. Snyder, plaintiff and appellee, against the Platte Valley Public Power and Irrigation District, a corporation, defendant and appellant. From a verdict in favor of plaintiff and against the defendant in the amount of $820 and judgment for $998.07 on the first cause, and from a verdict in the amount of $818.33 and judgment in

the amount of $996.03 in favor of plaintiff and against the said defendant on the second cause, the defendant has appealed. The difference between the respective verdicts and judgments is represented by interest computed by the court rather than the jury.

These two causes of action were before this court previously but because they were so combined with other causes of action on which a recovery was denied to plaintiff they were remanded to the district court with directions to permit amendment of pleading for separate presentment. The former case is reported as *Snyder v. Platte Valley Public Power and Irrigation District*, 140 Neb. 897, 2 N. W. 2d 327. The direction was complied with and an amended petition was filed setting forth the causes of action now before the court.

The first cause of action is for damages to land on account of claimed negligence in the construction and maintenance of a flume for the passage of waters over the right of way of defendant and onto lands of plaintiff. The second cause of action is for damages to crops upon these lands for the years 1936 to 1942, inclusive. Two sons of plaintiff were tenants on the lands and were owners of the crops, but they have assigned their cause of action to plaintiff.

The plaintiff is the owner of section twenty-one (21), township fourteen (14), north, range thirty-six (36), west of the sixth P. M. in Keith county, Nebraska, and other adjoining lands. This land is south of the North Platte river. Elizabeth Bassett is the owner of the east half of the northeast quarter of section twenty-eight (28), township fourteen (14), north, range thirty-six (36), west of the sixth P. M. in Keith county, Nebraska. The Bassett land adjoins the east half of the southeast quarter of section 21 along its south line. The defendant is a public power and irrigation district organized under chapter 86, Laws 1933, sections 70-701 to 70-715, Comp. St. Supp. 1941, commonly referred to as Senate File No. 310. By deeds dated January 28, 1935, and April 26, 1935, defendant obtained a right of way across the Elizabeth Bassett land on which to construct and

erect a canal for the passage and transportation of water generally from west to east. A canal was constructed on the right of way. The right of way and canal in so far as the Bassett land was concerned started from a point on the south line of section 21 about a quarter of a mile west of the southeast corner of said section 21 and extended across the Bassett land in a southeasterly direction. To the south of the right of way was a canyon having a drainage area of about 581 acres. The outlet for drainage from this canyon was to the northward and across the right of way and onto 120 acres of land in the southeast corner of section 21. To provide for drainage across the right of way and canal the defendant constructed thereover an overpass or flume of concrete, the inside height and width of which were, respectively, 5.5 feet and 15.6 feet. The length was 97 feet. The flume extended from south to north.

As a basis of claim for damages plaintiff alleges that prior to the construction of the flume the water came down from the canyon and spread out over her lands north of the right of way, and irrigated large areas beneficially. Further she says that by reason of what was done the water was concentrated in a narrow channel, in which the velocity in passage was so great that channels were cut in her lands, which channels interfered with farming operations, the spread of waters for irrigation purposes was prevented, crops were destroyed by flood waters and other crops failed in part on account of lack of previous manner of irrigation, since the waters flowed across instead of spreading out over the lands.

In its brief the defendant sets forth numerous assignments of error. The first assignment to be discussed will be the one charging that the court erred in overruling defendant's motion for a directed verdict made at the conclusion of plaintiff's case and renewed at the conclusion of the evidence. In this motion defendant contends that there was an absence of proof of the negligence alleged in the petition. A disposition of this question will dispose of a number of other assignments of error.

The defendant as a public power and irrigation district had the right to exercise the power of eminent domain in the acquisition of property and rights of way necessary to carry into effect the purposes for which it was organized. Comp. St. Supp. 1941, sec. 70-707 and sec. 70-609. The portion of right of way here over which the flume was constructed was one which the defendant could have obtained by condemnation under its power of eminent domain. *Snyder v. Platte Valley Public Power and Irrigation District, supra.* It did not so obtain it but obtained it by purchase. This purchase carried with it all of the incidents of taking by eminent domain or condemnation in so far as the question of damages by reason of construction is concerned. *Snyder v. Platte Valley Public Power and Irrigation District, supra.*

One of the incidents of taking property by eminent domain is that not only is the condemnor liable to compensate for the taking but also is liable in this jurisdiction, by virtue of section 21, art. I of the Constitution of the state, for consequential damage to other property in excess of the damage sustained by the public at large. *City of Omaha v. Kramer,* 25 Neb. 489, 41 N. W. 295; *Mason City & Ft. D. R. Co. v. Wolf,* 148 Fed. 961, 78 C. C. A. 589; *Omaha Horse Ry. Co. v. Cable Tramway Co. of Omaha,* 32 Fed. 727, 140 U. S. 692, 11 S. Ct. 1025; *Cable Tramway Co. of Omaha v. Omaha Horse Ry. Co.,* 140 U. S. 674, 11 S. Ct. 1018. In *City of Omaha v. Kramer, supra,* the following significant statement is found: "Section 21, article I. of the constitution of this state provides that, 'The property of no person shall be taken or damaged for public use without just compensation therefor.' The section above taken, except the words 'or damaged,' was in the constitution of 1867. Under that constitution, if any portion of a person's real estate was taken for public use, he could recover all the damages sustained by the taking; but if none of his real estate was taken for public use he could recover nothing, although his property had been greatly damaged by such use. The provision, therefore, is remedial in its nature, and the well known rule

that, in the construction of remedial statutes three points are to be considered, viz., the old law, the mischief, and the remedy, and so to construe the act as to suppress the mischief and advance the remedy, is to be applied. 1 Blackstone Com., 87. Applying this rule to the provision in question, and it embraces all damages which affect the value of a person's property, and includes cases like that under consideration. In other words, the words, 'or damaged,' in Sec. 21, Art. I. of the constitution, include all actual damages resulting from the exercise of the right of eminent domain which diminish the market value of private property."

It therefore follows that although the portion of the right of way on which the flume was constructed is not over and across the lands of plaintiff yet she may have her action against the defendant for damages.

As already pointed out the actions of plaintiff, by the terms of the petition, are grounded in negligence in the control of the water coming from the drainage area. Plaintiff claims this was surface water as that term is used in the law of this state as distinguished from a watercourse. For a determination of the question of whether or not she may recover under this theory it becomes necessary to review some of the previous decisions of this state. It appears expedient for our purposes to begin with *Morrissey v. Chicago, B. & Q. R. Co.*, 38 Neb. 406, 56 N. W. 946. The opinion in this case is an authoritative statement with regard to issues similar to ones involved in this case and it contains no reference to earlier decisions of this court except one wherein is defined a watercourse and wherein it was declared under the facts that a watercourse did not exist.

A watercourse is defined in this opinion by quotation from *Pyle v. Richards,* 17 Neb. 180, 22 N. W. 370, as follows: "To constitute a water-course the size of the stream is immaterial. It must be a stream in fact, as distinguished from mere surface drainage occasioned by freshets or other extraordinary causes, but the flow of water need not be constant." Further defining a watercourse and in declaration

of liability for diversion therein, by quotation from *Pyle v. Richards, supra,* it is stated: "When water has a definite source, as a spring, and takes a definite channel, it is a water-course, and no person through whose land it flows has a right to divert it from its natural channel so as to cause injury to another land-owner by the diversion."

In the opinion (*Morrissey v. Chicago, B. & Q. R. Co., supra,*) a declaration in an instruction that the common-law rule with regard to control of surface waters obtained in this jurisdiction is approved. This rule is comprehensively restated with its recognized exceptions in *Lincoln & B. H. R. Co. v. Sutherland,* 44 Neb. 526, 62 N. W. 859. Surface water was defined in the third paragraph of the syllabus in *Morrissey v. Chicago, B. & Q. R. Co., supra,* as follows: "The term 'surface water' includes such as is carried off by surface drainage,—that is, drainage independently of a water-course, * * * ."

With regard to rights and liabilities as to surface water the court in the same opinion, at least inferentially, approved the following from an instruction given by the trial court: "A railroad company, by its right of way, has the same right as a farm owner has to his farm, or any other land proprietor within the law of the above instruction, as to surface water." No later decision that we have examined appears to have changed this rule. For the purposes of this opinion the rule is accepted and it appears that it should be and is extended to the defendant in this case.

In the light of these rules and definitions the court in that case, conforming to the common-law rule, held, again in the third paragraph of the syllabus the following: " * * * and for the construction of an embankment proper for railroad purposes, which deflects such surface water from its normal course, a railroad company is not liable in damages to the proprietor of neighboring lands thereby incidentally overflowed and injured."

The opinion in that case suggests no exceptions to the common-law rule except, if it may be considered an exception, where the construction is not in a manner proper for

the operation of its line of railway. The particular language containing the exception is the following: "The railroad company, in the absence of evidence to the contrary, must be presumed to have constructed its embankment in a manner proper for the operation of its line of railway." A ground of action for negligence in construction in application, to neighboring lands as distinguished from negligence in construction for use by the railway is in no wise suggested.

The later cases recognize a departure from the strict common-law rule and the rule of *Morrissey v. Chicago, B. & Q. R. Co., supra,* with reference to surface waters. In the opinion in *Anheuser-Busch Brewing Assn. v. Peterson,* 41 Neb. 897, 60 N. W. 373, it is said: "Subject to that rule (common-law rule) every proprietor may lawfully improve his property by doing what is reasonably necessary for that purpose, and unless he is guilty of some act of negligence in the manner of its execution, he will not be answerable to his neighbor, although he may thereby cause the surface water to flow upon or from the premises of the latter to his damage. The injury in such case is but a mere incident to the proper use of the owner's property; but if in the execution of the enterprise in hand he is guilty of negligence, which is the natural and proximate cause of injury to the adjoining proprietor, the law holds him accountable therefor." It will be observed by an examination of this quoted language negligence is recognized as an exception to the common-law rule, however the negligence contemplated is limited to negligence in construction. The effect on neighboring land seems not to be a matter for consideration unless the effect flows from negligence in construction.

In *Lincoln & B. H. R. Co. v. Sutherland, supra,* the exception was further extended. In this case it is pointed out that if by the construction the neighboring land was *unnecessarily* injured damages were recoverable. In the opinion it is stated: "These cases, and all of them, recognize the rule of the common law that surface water is a common enemy and that the proprietor may by embankment or dike

or otherwise defend himself against its encroachments and will not be liable in damages which may result from the deflection or repulsion of such surface waters defended against, provided that the proprietor in making the defenses on his own land himself exercised ordinary care; but these cases, and all of them, also recognize the rule that a proprietor must so use his own property as not to unnecessarily and negligently injure another." It will be observed that by the rule of this case the exception is extended to include lack of ordinary care and unnecessary and negligent injury to the property of another whereas before the right to recovery of damages was made to depend solely on negligence in construction.

The rule substantially as stated in this case has been followed in all of the later cases except two wherein the effort was to recover damages for negligence on account of diversion or improper control over surface waters. See *Jacobson v. Van Boening,* 48 Neb. 80, 66 N. W. 993; *Town v. Missouri P. Ry. Co.,* 50 Neb. 768, 70 N. W. 402; *Todd v. York County,* 72 Neb. 207, 100 N. W. 299; *Shavlik v. Walla,* 86 Neb. 768, 126 N. W. 376; *Muhleisen v. Krueger,* 120 Neb. 380, 232 N. W. 735; *Jorgenson v. Stephens,* 143 Neb. 528, 10 N. W. 2d 337. The exceptions to the rule are *Gledhill v. State,* 123 Neb. 726, 243 N. W. 909, and *Leaders v. Sarpy County,* 134 Neb. 817, 279 N. W. 809. These cases and the rules therein announced will be discussed later in this opinion.

For plaintiff to recover on the theory of her petition the burden was on her to establish negligence on the part of the defendant in control of surface waters within the meaning of this rule. It may further be said that the record apparently limited the trial court and limits us to a consideration of the question of whether or not there was evidence of a failure of the defendant to exercise and employ ordinary care so as not to unduly injure and damage by the construction of its flume. The evidence is without dispute that there was no negligence in the construction of the flume itself for the defendant's purposes. It was constructed in conform-

ity with recognized and approved engineering principles from the viewpoint of defendant.

Had she abandoned her theory that these were surface waters and adopted the theory of defendant that the flume was constructed in a fixed and well-defined watercourse her burden probably would have been lessened since all that it would have been necessary for her to prove, at least as to her claim that the water was diverted from normal direction of flow, was that there had been a diversion from the natural channel in such manner as to cause injury to her land. In *Pyle v. Richards, supra*, it was said: "When water has a definite source, as a spring, and takes a definite channel, it is a water-course, and no person through whose land it flows has a right to divert it from its natural channel so as to cause injury to another land-owner by the diversion." See, also, *Kane v. Bowden*, 85 Neb. 347, 123 N. W. 94; *Keifer v. Stanley*, 111 Neb. 822, 198 N. W. 144; *Gledhill v. State, supra; Leaders v. Sarpy County, supra*. This last cited case appears to extend the "watercourse" rule to "surface waters." We think that notwithstanding the broad statement of the rule, that is the extension of the rule relating to watercourses to surface waters, that as an authoritative precedent it must be limited to watercourses since the subject matter of the action was a watercourse rather than surface water. She did not so abandon her theory and adopt the theory of the defendant in this respect.

Without setting out any very definite guide for the determination of whether or not there has been negligence or lack of ordinary care in the control of surface water this court has said that the question is for the jury under the facts and circumstances in evidence in the case. In *Lincoln & B. H. R. Co. v. Sutherland, supra*, it is stated: "We think that any person who was acquainted with this draw, and the manner in which the embankment was constructed, and the manner in which it affected the waters run into this draw, was competent to state the facts; and it was for the jury to say, from all the facts and circumstances in evidence in the case, whether the embankment was negligently

constructed." In *Morse v. Chicago, B. & Q. R. Co.*, 81 Neb. 745, 116 N. W. 859, it is stated: "The defendant contends that the verdict is not supported by sufficient evidence, in that there is no showing whatever as to its unnecessarily or negligently injuring plaintiff. If it is meant by this that no expert witness was called to pass judgment upon the method used by defendant in maintaining its roadbed at this point, the answer must be that such testimony was not necessary. The evidence sufficiently shows what was done and what the result was; and it was a question for the jury whether the defendant was chargeable with negligence."

In the case at bar the evidence of plaintiff showed that by the construction of the flume all of the water coming from the 581 acre drainage area except a small portion which flowed into defendant's canal was concentrated and caused to flow across the flume thus cutting channels in plaintiff's lands which had not theretofore existed, whereas prior thereto in its escape from the area it spread over wider areas depending upon the amount and rapidity of rainfall, the widest area being around 1,300 feet; that in its passage large quantities of erosive material were carried onto plaintiff's lands; that prior to the construction of the flume the water instead of passing onto and across plaintiff's land in channels it fanned out and was diffused over plaintiff's lands thus irrigating a large portion; that on more distant but adjoining lands to the north where water from the drainage area had not flowed before the construction of the flume the water flowed with such volume as to destroy pump irrigation canals or laterals thus hindering irrigation thereon; also the evidence of plaintiff shows that the direction of flow in what defendant contends was a fixed outlet or watercourse from the drainage area was changed thus causing water to flow on plaintiff's land which would have been dispersed in another direction. In addition to this the jury before the close of the trial had the benefit of a view of the premises.

In the light of the rule that the question of negligence is for the jury we are unable to say on the facts and circum-

stances disclosed in the evidence that the court erred in submitting the question of negligence to the jury for determination.

If we are to accept as a controlling precedent *Gledhill v. State, supra,* the plaintiff is not left to pleading and proof of negligence as a basis for recovery in this action. Under the authority of this case if her pleadings and proof are sufficient and she is not barred by her own limitation of her theory of action to negligence as disclosed by her pleadings she is entitled to recover under the terms of section 21, art. I of the Constitution, heretofore quoted, without regard to negligence.

The plaintiff pleaded substantially that the flume was constructed on a right of way which was acquired for a public use and that it was being used in conformity with the purpose for which it was acquired. She pleaded that her property was damaged thereby. Her allegations in this respect were supported by substantial evidence. On this pleading and this proof she would have been entitled to have the determination of her causes of action submitted to a jury if she had not pleaded negligence. Without regard to the charge of negligence she charged that she had been actionably wronged to her damage. The wrong and damage was in violation of the Constitution. May it be reasonably said that she should suffer because she had described the wrong as negligence? We think not. The holding of the opinion in *Gledhill v. State, supra,* summarized in the sixth paragraph of the syllabus as follows, is approved: "In a suit to recover damages under the constitutional provision for damage to property for public use, it is immaterial whether the petition states a cause of action *ex delicto* or *ex contractu.* If the fact is established that property has been damaged for public use, the owner is entitled to compensation."

The case of *Spurrier v. Mitchell Irrigation District,* 119 Neb. 401, 229 N. W. 273, is in conflict with *Gledhill v. State, supra,* on the proposition that there may be a recovery of damage under the Constitution occasioned by the construction of public works without regard to negligence.

An interesting statement with cited authorities in opposition to the holding in *Spurrier v. Mitchell Irrigation District, supra,* is found in the dissenting opinion in that case. In the view now taken we feel obliged, in the respect herein under consideration, to overrule the holding in that case.

We come now to the question of whether or not plaintiff has adduced proof in support of the proper measure of damages in such cases as this one. First, as to land, where land is not taken, the measure is the difference in value before and after the construction of the structure causing the damage, taking into consideration the uses to which the land was put and for which it was reasonably suitable. See *Applegate v. Platte Valley Public Power and Irrigation District,* 136 Neb. 280, 285 N. W. 585; *Asche v. Loup River Public Power District,* 138 Neb. 890, 296 N. W. 439. We think plaintiff's evidence in this respect was competent and sufficient for submission to a jury.

As to damage to crops we think the evidence meets the requirements as to measure of damage and sufficiency and clarity of proof to take it out of the realm of speculation for the purpose of submission to a jury within the meaning of the rule announced in *Gledhill v. State, supra,* and approved in *Snyder v. Platte Valley Public Power and Irrigation District, supra.* The rule therein announced and approved is the following: "Damages based upon the value of unmatured crops are analogous to profits lost, and are governed by the same rule precluding recovery in cases of either uncertainty or remoteness. The question of whether damages based on the result of an unmatured crop are speculative must be determined by whether there is sufficient data to determine with reasonable certainty the probable value it would have had if matured." 17 C. J. 785; 25 C. J. S. 514, sec. 41.

There is no direct attack upon the amount or the size of the verdict as to either cause of action. Any attack made upon it in this respect, if any, is included within the claim that no proper criterion for the measurement of damage was submitted and no sufficient proof in support of a proper

criterion was supplied by the plaintiff. However that be, in the light of our holding that proper rules for measure of damage were submitted and that plaintiff adduced sufficient evidence for submission, we do not hesitate to say that the evidence so adduced amply supports the amounts of damage as found by the jury.

In appellant's brief are seven assignments of error predicated on instructions to the jury given by the court. In the light of the conclusions arrived at with regard to the propositions of law discussed and determined herein we observe no prejudicial error in any of these instructions. The same may as well be said with regard to the refusal of the court to give instructions tendered by the defendant.

No error prejudicial to the defendant having been found, the judgment of the district court is affirmed.

AFFIRMED.